Filed 8/27/13  In re Justin L. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JUSTIN L. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>W.L.,<br><br>    Defendant and Appellant. | F066679<br><br>(Super. Ct. Nos. 11CEJ300078-1, 11CEJ300078-2)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kevin Briggs, County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]    Before Gomes, Acting P.J., Detjen, J. and Franson, J.

-ooOoo-

W.L., mother, appeals orders placing her children, Justin L. and Patrick L., Jr., with their father, Patrick L., providing family maintenance services for father and terminating her services. Mother claims the juvenile court erred and denied her due process rights by denying her a trial on the issue of whether she had been provided reasonable family reunification services. She also contends that the juvenile court committed an abuse of discretion by terminating jurisdiction and issuing an exit order. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In a Welfare and Institutions Code section 300 petition[1] filed in April of 2011, the Fresno County Department of Social Services (department) alleged that seven-year-old Justin and five-month-old Patrick Jr. were at risk of harm due to dirty and unsafe conditions in the home, as well as mother and father's use of marijuana.

*Detention*

The report prepared in anticipation of the detention hearing stated that mother was alleged to have been driving her car on April 16, 2011, while intoxicated. Father and the children, who were unrestrained, were passengers in the vehicle. The back seat of the car was full of trash, including marijuana, syringes and food items. Both parents admitted smoking marijuana in the car. The children were taken into protective custody. They were so dirty they were sent for medical clearance before they could be placed. The following day, mother was injured in a train accident, resulting in the loss of 40% of her right leg. Mother and father's home was found to be in a dirty condition, similar to the car. Following an April 20, 2011, hearing on the petition, the children were detained.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## Jurisdiction

The report prepared in anticipation of the jurisdiction hearing stated that the children were in separate foster homes. Mother was hospitalized due to her injuries,[2] was heavily medicated, and unable to effectively communicate with the social worker. She was not able to participate in a team decision meeting along with father, the paternal grandparents, and others. Mother tested positive for marijuana when she was admitted to the hospital.

On May 11, 2011, father executed a waiver of rights and submitted the petition on the department's reports.

On June 27, 2011, mother requested a restraining order against father, claiming he had grown increasingly more abusive and possessive. According to mother, a day after the children were taken into foster care, father convinced her to go to a local hospital, where father tackled mother and pinned her to the ground with his arm around her neck, "yelling to a nearby security guard that I was '5150.'" Mother was able to free herself and fled from father on foot. When she attempted to hop on to a moving train, she fell and badly injured herself. Father told hospital personnel that mother was a diagnosed schizophrenic. Mother said she was afraid of father and, although she tried to keep him away, he improperly appeared at her visits with the boys. Father refused to return mother's property.

On July 22, 2011, the juvenile court denied mother's request for a restraining order and instead entered a no-contact order, requiring all of father's contact with mother be through counsel. That same day, the court found the allegations of the section 300 petition to be true.

---

[2] Mother sustained an amputation to her leg below the knee, a shattered hip, broken femur and a broken arm.

*Disposition*

In its report prepared in anticipation of the August 10, 2011, disposition hearing, the department recommended that the children remain in foster care and that mother and father receive reunification services. Mother's condition prevented her from traveling for visits, so the department recommended visits via Skype. Though no longer hospitalized, she had difficulty moving around.

The department reported that neither mother nor father had any criminal history. Father had relocated to Nevada to live with family. The department reported that Justin was developmentally delayed and had a number of significant medical conditions. Patrick Jr. had tested positive at birth for marijuana and opiates.

On September 28, 2011, both boys were declared dependents of the juvenile court and placed in foster care. Reunification services were ordered for both parents, including parenting classes, a substance abuse evaluation, a mental health evaluation, and random drug testing.

*Six-Month Review*

Post disposition mediation in November of 2011 resulted in an agreement, which was adopted by the juvenile court. By this time, mother had relocated to Indiana, where her family lived, for medical treatment and rehabilitation. Father had returned to California. Mother was having difficulty accessing reunification services in Indiana, because local authorities insisted on being paid in advance for services, contrary to the department's practice of paying for services after they have been rendered.

In its March 2012 status review report, the department indicated that the boys remained in separate foster placements. The department recommended that reunification services continue for both parents. Mother was participating in some services, namely parenting classes, but claimed she was unable to participate in other services due to her physical condition. Instead, she was concentrating on her physical recovery. Mother filed a statement of issues on May 8, 2012, contesting the reasonableness of the services

4.

actually provided pursuant to the court-ordered case plan. On May 18, 2012, the juvenile court found that the department had offered reasonable services for the period up until the six-month hearing.

The six-month review hearing was continued for a variety of reasons, without the juvenile court making a specific order regarding the continuation of services, except to state that all prior orders remained in effect. The court did vacate the order that father comply with random drug testing. He was also to begin unsupervised visits.

*Twelve-Month Review*

In its status review report of June 21, 2012, the department again recommended continuation of services for the parents. Patrick remained in foster care; Justin was on an extended visit with father. According to mother, her poor health continued to inhibit her ability to participate in services. But the department noted that visitation was difficult because mother did not keep the department informed of changes to her address or phone number, she did not reply to emails sent to her, and she did not apprise the department of her availability for the visits via Skype.

On June 29, 2012, the combined six- and 12-month review hearing, the juvenile court ordered an additional six months of reunification services for both mother and father. The juvenile court found that reasonable services were offered mother, but that her progress toward alleviating and mitigating the causes of removal of the minors was minimal, while father's was significant. The juvenile court removed the previous requirement that mother participate in random drug testing and ordered a hair follicle test instead.

On July 20, 2012, the juvenile court granted the department's request that father's services be changed from reunification services to a plan of family maintenance regarding Justin, who had been placed on a long term visit with him since May 24, 2012. Father had completed all of his services and visited consistently. Reunification services

were continue for Patrick Jr., who remained in foster care but was making a slow transition from the care provider's home to father's home.

*Eighteen-Month Review*

By late 2012, the department recommended termination of jurisdiction and the permanent return of both children to father. Mother objected to termination of her reunification services, arguing that she had been without sufficient support from the department. In anticipation of the contested 18-month review hearing, the juvenile court requested that the parties brief three issues: (1) whether the court should consider the issue of reasonable services to a parent who is not receiving physical custody when a dismissal of dependency is recommended to the other offending parent; (2) whether the court can continue services to mother beyond the 18-month date; and (3) what implication section 364 had on these issues.

On November 16, 2012, the juvenile court ordered family maintenance begin with father for Patrick, Jr., who was placed with him.

On January 16, 2013, the juvenile court denied mother's request to present evidence on the issue of reasonable services, finding the issue irrelevant, and terminated reunification services for her. Subsequently, on January 28, 2013, the juvenile court terminated jurisdiction over the boys, ordering that they be returned permanently to father.

**DISCUSSION**

I. DID THE JUVENILE COURT ERR AND VIOLATE MOTHER'S DUE PROCESS RIGHTS WHEN IT DENIED HER A CONTESTED HEARING ON THE ISSUE OF REASONABLENESS OF SERVICES?

Mother contends that the juvenile court abused its discretion and violated her due process rights at the 18-month review hearing when it denied her a contested hearing on the issue of whether she had been provided reasonable services. Mother further contends that this error on the part of the juvenile court prevented her from arguing that the

juvenile court should continue reunification services past the 18-month date, to allow her to reunify with her children. We find no prejudicial error.

The juvenile court must hold a review hearing for dependent children no less than once every six months. (*In re N.S.* (2002) 97 Cal.App.4th 167, 171 (*N.S.*).) If a child has been removed from his parents and remains out of parental custody, the review hearings are held under sections 366 and 366.21. During the reunification period, except in certain specified circumstances, the parents will be offered services, and at each hearing the court determines whether reasonable services have been offered or provided. (§§ 361.5, subd. (a); 366.21, subds. (e), (f), & (g)(1).) At the six-month or the 12-month hearing, the court returns the child to the parents' custody unless it finds return would cause a substantial risk of detriment. (§ 366.21, subds. (e) and (f).) At the 18-month review hearing, a section 366.26 termination hearing is set, unless the juvenile court finds that the child will be returned to the physical custody of his or her parent or that reasonable services were not provided to the parents. (§ 366.21, subd. (g)(1).)

Section 364 establishes procedures for review hearings for children who have been adjudged dependent children, but have *not* been removed from their parents.[3] When proceeding under section 364, because the child is in placement with a parent, the court is not concerned with reunification, but with determining whether continued supervision is necessary in the family home. Thus section 364 limits the juvenile court's inquiry to whether the conditions requiring continuing supervision exist. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 304; *In re Elaine E.* (1990) 221 Cal.App.3d 809, 814.) Section 364 "does not allow the parties to present evidence on *any* issue[;] rather,

---

[3] Section 364 states, in relevant part: "(a) Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent … shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing.…"

the court's inquiry (and parties right to present evidence) is limited to whether continued supervision is necessary." (*In re Elaine E., supra,* at p. 814.)

But the issue here is whether section 364 also applies when a child has been removed from both parents and then returned to only one parent. *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650 (*Gabriel L.*) held that it did, following the reasoning of *N.S., supra,* 97 Cal.App.4th at page 171. In *N.S.,* the child was removed from both parents' custody, but then placed with the mother and the father was ordered not to reside in the home. (*Id.* at p. 170.) Because the child was a dependent child of the juvenile court, the court was required to conduct review hearings every six months either under section 366.21 or under section 364, but the court reasoned section 361.21 did not apply under the circumstances because the child was not out of parental custody. Therefore, it found section 364 must apply. The court stated, "[u]nless section 364 applies, there is no statute governing the court's review hearings for a minor who has been removed from, but is subsequently placed back in, parental custody." (*N.S., supra,* at p. 172.)

In agreeing with the analysis in *N.S.,* the court in *Gabriel L.* stated it disagreed with our analysis in *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1493 (*Sarah M.*), overruled on other grounds in *In re Chantal S.* (1996) 13 Cal.4th 196, 204. In *Sarah M.,* the juvenile court awarded father, who was previously the noncustodial parent, custody of the minor daughter under section 361.2, removing custody from mother and terminating its jurisdiction over the child. The juvenile court relied on section 364 in terminating its jurisdiction over the child. This court held that section 364 was not applicable, as it "applies in cases where the dependent child has not been removed from the original custodial home," but we found no prejudicial error. (*Sarah M., supra,* at p. 1493.)

We find the facts of *Sarah M.,* in which the child was placed with a previously noncustodial parent, distinct from the situation here, in which the children were removed from both parents' custody and returned to one parent. We therefore follow the analysis of *Gabriel L.* and *N.S.* and find that section 364 applies.

8.

Here, the juvenile court, after a lengthy discussion on the record, determined that section 364 applied and that the issue of whether services were reasonable was not relevant at this juncture and denied mother's request to present evidence on that issue. We agree, and find no error on the part of the juvenile court.

Even if we assume, for purpose of argument, that mother had a right to contest the reasonableness of services at the 18-month hearing we find the error harmless as mother was provided reasonable services.

First, we note that, in this case, the juvenile court found mother was provided reasonable services at the six-month and 12-month combined review hearing and mother did not appeal those findings. They are therefore final and binding and not subject to our review. We must therefore confine our review of the reasonableness of services to the period between the 12- and 18-month review hearings.

On September 29, 2011, mother was ordered to complete a parenting class, substance abuse evaluation and recommended treatment, domestic violence evaluation and recommended treatment, mental health assessment and recommended treatment, and random drug testing. Mother was granted reasonable supervised visits with the children, either face to face or through Skype. Subsequently, mother voluntarily relocated to Indiana, making the coordination of her services far more complex, requiring coordination between agencies in different states.

The report prepared in anticipation of the 18-month hearing scheduled for October of 2012, stated that mother had only started to participate in her assessments and her individual counseling at the beginning of October 2012. Up until that point, mother had made no significant progress in any of her services. She failed to notify the department of any address or telephone changes, she failed to notify the department of any surgeries

9.

or physical therapy she was required to have, and she had not participated in any visitation until an October 1, 2012 Skype visit[4].

We find mother's claim that she did not receive reasonable services without merit. Although we recognize mother's traumatic injury and are sympathetic to her recovery, substantial evidence reveals that the department provided mother with reasonable reunification services. Further, the services were reasonably geared to overcoming the problems that caused the dependency and were appropriate under the circumstances. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 424-425; *In re Christina L.* (1992) 3 Cal.App.4th 404, 417.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) The problem is not that inadequate services were offered, but that mother voluntarily moved out of state, failed to keep the department posted of her whereabouts and limitations, and failed to benefit from the services offered.

Because we find that reasonable services were offered mother, which she did not avail herself of, we need not address her further argument that, had she been allowed to argue the inadequacy of reunification services, the juvenile court could have extended the reunification period up to 24 months due to the failure of the department to provide such reasonable services. Only under exceptional circumstances, "in rare instances," not present here, a juvenile court can extend reunification services beyond 18 months. (*In re N.M.* (2003) 108 Cal.App.4th 845, 852; see, e.g., *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1793 [mother hospitalized with mental illness during dependency had nonetheless completed the plan and needed to stabilize]; *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1216 [no reunification services offered during last 12 months]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777 [no reunification plan developed].) We note

---

[4] The department did acknowledge a "mix-up" concerning a Skype visit scheduled for September 17, 2012, and that make up visits would be given.

also that the above-mentioned cases all involved possible termination of parental rights, which sprung from a section 366.26 hearing. Here, the juvenile court did not terminate parental rights, but terminated reunification services and dismissed the case with custody to father. Mother retained all the same parental rights to the children before and after termination of reunification services. The only change is that she is not provided reunification services by the state, but can choose to do so on her own.

Mother makes the additional claim that she was denied due process when the juvenile court failed to allow her to present evidence on the issue of the reasonableness of services. In the context of juvenile dependency proceedings, "[t]he due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court.'" (*In re Thomas R.* (2006) 145 Cal.App.4th 726, 733, quoting *Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146-1147.) "At any given point in the process, the applicable statute lists exactly what is at issue by specifying the required findings." (*David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 779.)

If section 364 is applicable, mother's argument fails as the only issue was whether continued supervision of the minor was necessary. If, for the sake of argument, mother should have been allowed to present evidence on the unreasonableness of services, we find harmless error, as evidenced by our finding above, that mother was provided reasonable services. (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1515.)

## II. DID THE JUVENILE COURT ABUSE ITS DISCRETION WHEN IT TERMINATED JURISDICTION AND ISSUED AN EXIT ORDER?

Mother argues that the juvenile court erred when it terminated jurisdiction and issued an exit order. We disagree.

Section 362.4 authorizes the juvenile court, when terminating jurisdiction over a child who has been declared a dependent child of the court, to issue a custody and

11.

visitation order (an "exit" order)[5] that will become part of the relevant family law file and remain in effect in the family law action "until modified or terminated by a subsequent order …." We review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody order pursuant to section 362.4 for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) And we may not disturb the order unless the court ""'"exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination …."'"" (*Ibid.*)

Mother's assertion that the juvenile court abused its discretion in terminating its jurisdiction and in fashioning its exit order is primarily focused on the issue of custody and her argument that the juvenile court failed to consider a number of factors set forth in Family Code section 3011, particularly "domestic violence, substance abuse, and contact between parent and child," when it made its determination. But the problem with this argument is that Family Code section 3011 does not apply in dependency cases. Instead, section 3011 begins by stating that, "[i]n making a determination of the best interest of a child in a proceeding described in Section 3021 …. (Fam. Code, § 3011.) And Family Code section 3021, in turn, provides that it applies to a variety of proceedings, for example proceedings for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, but does not mention proceedings under section 300 of the Welfare and Institutions Code, at issue here.

Instead, when making a custody determination under section 362.4, "the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; accord, *In re Chantal S. supra,* 13 Cal.4th at p. 206.) This determination is made without reference to any preferences or presumptions ordinarily applicable in the family court. (See *In re John W.* (1996) 41

---

[5] Although not used in the dependency statutes, the term "exit order" has become shorthand for custody orders issued pursuant to section 362.4. (See *Bridget A. v. Superior Court, supra,* 148 Cal.App.4th at pp. 300-301.)

Cal.App.4th 961, 972 [ordinary "presumption of parental *fit*ness 'that underlies custody law in the family court just does not apply to dependency cases'"].)

Given the inapplicability of Family Code section 3011 to juvenile dependency proceedings, and the fact that evidence of the reasonableness of services was either irrelevant or, as discussed in section I, above, not borne out by the evidence, mother has failed to demonstrate that the juvenile court abused its discretion in some way by terminating jurisdiction and fashioning the exit order as it did.

Mother also acknowledges that the custody and visitation order was the result of a mediation between mother and father, but claims that she was in an unfair position at the time of mediation because of the juvenile court's refusal to hear her argument regarding the reasonableness of services. This is a claim we have already rejected.

## DISPOSITION

The orders are affirmed.