[No. A109716. First Dist., Div. Four. June 9, 2005.]

DENNY H., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF
HUMAN SERVICES et al., Real Parties in Interest.

**COUNSEL**

Law Offices of Mark R. Murray and Mark R. Murray for Petitioner.

No appearance for Respondent.

Dennis J. Herrera, City Attorney, Joseph Sandoval, Deputy City Attorney; and Patricia A. Fitzsimmons for Real Parties in Interest.

**OPINION**

**REARDON, J.**—By petition seeking a writ of mandate, Denny H. (father) asks us to vacate the juvenile court's order terminating reunification services and setting a selection and implementation hearing pursuant to Welfare and Institutions Code[1] section 366.26 for his daughters Jennifer (age 12) and Amanda (age 10). He asserts that (1) reasonable services were not offered to him and the court erred in denying him additional services; and (2) the trial court committed procedural errors which denied him due process. We deny the petition.

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *Prior Dependency*

The involvement of Jennifer (born 1993) and Amanda (born 1995) with dependency systems began in 1996 when both girls were taken from their mother and placed in protective custody in Napa. The matter was transferred to Mendocino County, where father lived. In March 1998 the Mendocino County Juvenile Court restored custody to him and terminated jurisdiction.

## B. *San Francisco Dependency*

Thereafter father and daughters moved a lot, ending up in San Francisco. In May 2003 father was arrested for public intoxication and the girls were taken into protective custody. The police report indicated that father begged the officers to take Jennifer and Amanda because he was tired of caring for them. The girls were dirty and smelled of urine. They had not attended school regularly for months. They blamed themselves for the incident.

### 1. *Jurisdiction*

Father submitted to allegations in the amended petition under section 300, subdivision (b) that: (1) he had an extensive history of "alcohol abuse" which required assessment and treatment; (2) he was arrested for intoxication, repeatedly saying he wanted the police to take his children and did not want to care for them anymore; (3) he was observed using inappropriate physical discipline as to Jennifer; (4) with a history of bipolar disorder and a lack of medication compliance, father was currently diagnosed as having extreme depression; (5) mother had histories of mental illness and substance abuse requiring assessment and treatment; (6) parents failed to benefit from prior interventions in other counties; and (7) the children were former dependents of the Mendocino County Juvenile Court; mother failed reunification and father regained full custody.

### 2. *Disposition*

The disposition hearing took place in September 2003. The court ordered that weekly visits between the girls and father continue and granted reunification services to father. Real party in interest San Francisco Department of Human Services (department) reported that the girls were placed together in foster care and the social worker had initiated the ICPC (Interstate Compact

on the Placement of Children) process to place them with their maternal grandmother in Oregon. Should that transpire, the social worker indicated the department would fund father's transportation.

Over father's objections, the girls were placed with their grandmother in Oregon in January 2004.

### 3. *Six-month Review*

The court approved placement with the grandmother at the six-month review hearing, held March 25, 2004. The social worker's report states that father was residing at Dolores Transitional House, where he was receiving services. The court continued the matter to the 12-month review, scheduled for September 23, 2004.

### 4. *Contested "12"-month Review*

The 12-month review was continued six times to March 3, 2005, nearly six months after the original date and 22 months after Jennifer and Amanda had been removed from father's custody.

Protective services worker Erin Granados prepared the report and an addendum. She recommended termination of reunification services and that a hearing be set to select a permanent plan. The minors were attending school and were developmentally on task. Their mother had begun visiting. Father had visited the girls four times in Oregon. Jennifer expressed that she did not want unsupervised visitation because her father fell asleep during visits; Amanda did not want to visit without Jennifer. Granados reported that the maternal grandmother was willing to serve as the girls' legal guardian and the minors preferred living with her.

In her addendum, Granados stated that father had completed the Baker Street House Program, which provided residential treatment services for substance abuse, counseling and testing. As well, he completed the Grove Street House Program, the Conard House-Dolores Program, and was presently residing at the Washburn Residence. He had monthly meetings with a psychiatrist and weekly meetings with a psychotherapist.

At the hearing father urged that adequate reunification services had not been provided, and requested services for an additional six months. The department proceeded, under objection, by way of offer of proof. It took the position that although father had complied in large part with the case plan, he had received services for more than 17 months and was not in a position to assume custody of the girls because he did not have housing or a reliable

source of income. The department acknowledged that although father had made "great efforts," it was not substantially probable that he would be able to reunify with his daughters within the mandatory 18-month period, which Granados calculated would expire in 20 days.

Regarding visitation, the December visit was cancelled due to father's hospitalization. Granados indicated the department would continue to work with father to coordinate visitation. She acknowledged that father had a significant bond with his girls, and would like him to remain in their lives. Hence the department was selecting legal guardianship as the permanent plan, not adoption.

The trial court limited the hearing to three hours on the belief that was the amount of time father's attorney selected. Counsel attempted to intercede that "[i]t was actually," but was not allowed to continue. The court also cut off cross-examination as to services provided to the minors as having an impact on family reunification.

### 5. Decision

The trial court issued findings that return of the minors to father would create a substantial risk of detriment to their safety, protection and well-being, based on father's "lack of appropriate housing and related inability to take the children into his home, and Father's lack of income." The court found that reasonable services had been provided or offered, concluded there was not a substantial probability that the children would return within the maximum 18-month period, and terminated reunification services. This writ proceeding followed.

## II. DISCUSSION

### A. Reunification Services

Father urges that there was insufficient evidence to sustain the finding that reasonable services were offered, and seeks an additional six months of reunification services. He also complains that the juvenile court erred in sustaining the department's relevance objection to questions of Granados concerning services to the children. Specifically, father argues that failure to provide services such as counseling to his daughters impacted visitation and reunification and must be taken into account when assessing the adequacy of services provided to him.[2] As we explain, all of father's arguments concerning the reasonableness of services provided are unavailing because the

[2] Among other authority, father cites *In re Alvin R.* (2003) 108 Cal.App.4th 962 [134 Cal.Rptr.2d 210]. There, conjoint and individual therapy were critical to reunification. The

hearing on March 3, 2005, must be deemed an 18-month hearing governed by section 366.22, not a 12-month hearing governed by section 366.21, subdivisions (f) and (g).

### 1. *Analysis: 18 Months is the Cutoff*

■ For children the ages of Jennifer and Amanda, court-ordered reunification services may be extended up to a maximum period of 18 months if the court finds at the 12-month review hearing "that there is a substantial probability that the [children] will be returned" to parental custody *or* that reasonable services have not been provided. (§ 361.5, subd. (a)(3).) The 18-month period commences on the date the minor originally is removed from parental custody. (*Ibid.*) Here, the children were removed from father's custody on May 4, 2003. At the time of the contested "12-month" hearing, *22 months had elapsed since removal.* This is four months beyond the 18-month maximum.

By dint of six continuances allowing significant time to pass, the 12-month hearing became the 18-month permanency review hearing. A similar conclusion was reached in *In re Brian R.* (1991) 2 Cal.App.4th 904, 918 [3 Cal.Rptr.2d 768] [by virtue of passage of time, 12-month review became 18-month permanency planning hearing] as well as *In re Albert B.* (1989) 215 Cal.App.3d 361, 374, fn. 2 [263 Cal.Rptr. 694] [with number of continuances, time for reunification services ran out; what started as six-month review was treated as permanency planning hearing].)[3]

*In re David H.* (1995) 33 Cal.App.4th 368 [39 Cal.Rptr.2d 313] also sheds light on this issue. There, the minor had spent nearly two and a half years in out-of-home custody. Notwithstanding that less than 12 months of services had been provided, the court set a hearing to choose a permanent plan. Said the reviewing court: "Where a child has been removed from his parents'

---

minor was unlikely to consent to visitation without such therapy. The father had done all that was required under his case plan but there was no evidence that the department made a good faith effort to make those sessions a reality. (*Id.* at p. 973.) Here, during cross-examination, father's counsel introduced a letter from Tracy Orth of the Oregon Human Services Department indicating that the girls needed counseling. He asked Granados what she did to arrange counseling. The deputy city attorney objected that the issue was whether reasonable services had been provided *to father.* While the court's ruling was erroneous under *In re Alvin R., supra,* 108 Cal.App.4th 962, the error was harmless. Here the barrier to reunification was not the children's relationship with father. Rather, it was his continued inability to provide housing and financial support.

[3] One court has insisted in dicta that the 18-month review *only* occurs if the matter has been continued at the 12-month hearing. (*In re Ricky H.* (1992) 10 Cal.App.4th 552, 556, fn. 2 [12 Cal.Rptr.2d 578].) We follow the precedent honoring limits on the time frame for reunification services. (§ 361.5, subd. (a)(3); Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (LexisNexis 2005) § 2.153, pp. 2-294 to 2-295 (Seiser).)

physical custody and has not been returned home after a [six- or 12-month review hearing], [section] 366.21[, subdivision] (g)(1) requires that a hearing to determine whether the child should be referred for adoption must be held within 18 months 'of the date the child was *originally taken from the physical custody* of his or her parent or guardian.' (Italics added; see also section 361.5[, subd.] (a).)" (*Id.* at p. 386.)

The *David H.* court stressed that the dependency law does not establish a minimum period of reunification. Rather, emphasis is on "setting outside limits to the length of time a child may be kept in foster care before a permanent plan is established." (*In re David H., supra,* 33 Cal.App.4th at p. 388.) Summing up this view, Seiser states: "[T]he statutory mandate for limiting reunification services to a maximum of 18 months from the date of the original removal will control over any conflict in the statutes." (Seiser, *supra,* § 2.153, p. 2-295.) This is because at the 18-month benchmark, the focus of a dependency proceeding shifts to the child's needs for permanency and stability. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

We are also aware of several cases where a juvenile court has extended services beyond the 18-month statutory period, but only under extraordinary circumstances "involv[ing] some external factor which prevented the parent from participating in the case plan." (*Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1388 [75 Cal.Rptr.2d 851] [affirming lower court's refusal to so extend services].) For example, in *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787 [42 Cal.Rptr.2d 200], the reviewing court affirmed the lower court's exercise of discretion "to accommodate the special needs of the family of the mentally ill in the unusual circumstances presented by this case." In particular, the mother was hospitalized for all but five months of the 18-month reunification period. (*Id.* at p. 1777.) Although father cites *Elizabeth R.* in his quest for extended services, his hospitalization was for six weeks, not 13 months. In other words, he had an opportunity to participate in the case plan.

 Any discretion to extend services beyond the 18 months for extraordinary circumstances logically would lie in the granting of a continuance of the 18-month review hearing pursuant to section 352, subdivision (a), which allows a juvenile court to "continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held." However, continuances will not be granted willy-nilly; the proponent must meet stringent requirements. First, a continuance will not be granted if it is contrary to the minor's interest, and in discerning that interest, the court must give substantial weight to the "minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and

the damage to a minor of prolonged temporary placements." (*Ibid.*) Second, a continuance will only be granted on a showing of good cause, and only for the period of time shown to be necessary. (*Ibid.*) We conclude that given the imperative to resolve dependency cases in a timely fashion, a continuance for 6 months after an 18-month review would be outside the scope of what the Legislature intended with enactment of the continuance statute. The result would be "a 24-month review, which does not exist in California's dependency statutes." (Seiser, *supra*, § 2.154[2][b], p. 2-303.)

When extraordinary special needs are not at issue, the approach taken in *Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088 [70 Cal.Rptr.2d 658] makes sense. There, the reviewing court concluded that the juvenile court's extension of services beyond 18 months was an abuse of discretion and in excess of its jurisdiction, as limited by statute. (*Id.* at pp. 1091–1092.) Reciting and reviewing the provisions of sections 366.21, subdivisions (f) and (g), and 366.22, the court was adamant that "[t]hese statutes make clear that respondent's order extending reunification services for an additional hearing 21 months after initial removal of the minor from the father's custody exceeded the court's jurisdiction." (60 Cal.App.4th at p. 1092.)

### 2. *No Reasonable Services Finding Required at Section 366.26 Hearing*

■ At the critical juncture of the 18-month hearing, the authority of the juvenile court to set a section 366.26 hearing is *not* conditioned on a reasonable services finding. In mandatory, unequivocal terms, section 366.22, subdivision (a) states that if the minor is not returned to parental custody at the 18-month review, "the court *shall* order that a hearing be held pursuant to Section 366.26 . . . . The hearing *shall* be held no later than 120 days from the date of the permanency review hearing. The court *shall* also order termination of reunification services to the parent . . . . The court *shall* determine whether reasonable services have been offered or provided to the parent . . . ." (Italics added.)

As explained in *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1015–1016 [70 Cal.Rptr.2d 603]: "Section 366.22, subdivision (a), does not give the juvenile court the option to continue reunification services nor does it specifically prohibit the court from ordering a section 366.26 hearing even if it finds reasonable reunification services have not been provided to a parent." This analysis reflects a change in the law based on a 1991 amendment enacted with the purpose, as set forth in the Legislative Council's Digest, of requiring the court to determine whether reasonable services had

been offered or provided, *but deleting " 'that requirement as a precondition for developing a permanent plan.'* (Legis. Counsel's Dig., Sen. Bill No. 475 (1991–1992 Reg. Sess.) Summary Dig., p. 352, italics added.)" (*Mark N. v. Superior Court, supra,* 60 Cal.App.4th at p. 1016, fn. 9.) Therefore, even if a finding of reasonable services were a prerequisite to ordering a section 366.26 hearing under the prior law, as so construed, "the 1991 amendment makes it clear the finding is no longer a precondition to moving to the permanent placement stage." (*Ibid.*)

██ The proposed permanent plan here is guardianship. Where the permanent plan is adoption with attendant termination of parental rights, other considerations come into play. The court may not terminate parental rights at the section 366.26 hearing *"if at each and every hearing* at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." (§ 366.26, subd. (c)(2), italics added.) As elaborated in rule 1463(f)(1) of the California Rules of Court, "[i]f at any prior hearing the court found that reasonable efforts had been made or that reasonable services had been offered or provided, the court may terminate parental rights." Although termination is not sought here, on this record there is a final order following the six-month review with the finding that reasonable services had been provided.

With continuances that ran the clock out to 22 months, the contested 12-month hearing became the 18-month permanency planning hearing. At that juncture father concededly was not in a position to resume the care of his daughters. They wanted to stay with their grandmother and were doing well in school. Prolonging the dependency with another continuance would have been an abuse of the court's discretion and contrary to the intent of the dependency statutes.

## B. *No Prejudicial Due Process Violation*

Father maintains that he was denied due process at the 12-month review hearing in that (1) proceeding by way of offer of proof on direct testimony infringed his right to confront and cross-examine the social worker, and (2) the trial court erred in denying his request for a continuance to conduct an adequate cross-examination. We treat each issue separately.

### 1. *Offer of Proof*

Rule 12.34 of the Local Rules of the Superior Court of the City and County of San Francisco governing juvenile court proceedings provides: "An offer of proof is a succinct statement given by counsel that states what a particular

witness would say if called to the stand. Offers of proof are subject to the same evidentiary objections as live testimony and should be distinguished and presented separately from argument. Direct testimony shall proceed by offer of proof. Unless otherwise stipulated, the witness shall be present to confirm the accuracy of said offer and be available for cross examination."

Father asserts that this procedure in which counsel for the department reads a statement in lieu of the witness taking an oath and answering questions "amounts to nothing more than a forced stipulation of facts." He emphasizes that this was a one-witness case for the department and his case depended in part on showing that the social worker failed in her role to provide reasonable reunification services.

■ A parent in a dependency proceeding has a due process right to confront and cross-examine persons who prepared reports or documents submitted to the court by the petitioning social services agency, and the witnesses called to testify at the hearing. (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 849 [84 Cal.Rptr.2d 269]; see also *In re Malinda S.* (1990) 51 Cal.3d 368, 382–383 [272 Cal.Rptr. 787, 795 P.2d 1244].) This right is confirmed by rule 1412(j)(2) of the California Rules of Court. A party's right to confrontation is also delineated in Evidence Code section 711: "At the trial of an action, a witness can be heard only in the presence and subject to the examination of all the parties to the action, if they choose to attend and examine." The examination of a witness proceeds from direct examination, to cross-examination, to redirect, recross, etc. (*Id.*, § 772, subd. (a).) "Direct examination" of a witness is defined as "the first examination of a witness upon a matter that is not within the scope of a previous examination of the witness." (*Id.*, § 760.)

■ Although Granados was "duly sworn" and at the close of counsel's recitation of the offer of proof she indicated that the offer "fairly and accurately" represented her testimony, we are troubled by the use of the offer of proof procedure mandated in this case by local rule. First, nonstipulated offers of proof are not testimony. For example, in this case, in lieu of the live testimony of social worker Granados, counsel for the department recited an unsworn prepared statement indicating what Granados would state if called to testify, and at the conclusion of the recitation Granados, previously sworn, adopted the statement. ■ An unsworn statement of counsel is not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

■ Second, the procedure compromised the ability of father and his counsel to observe Granados's demeanor, responsiveness and recollection during the course of a direct examination process. In a contested hearing, the

precise words and demeanor of a witness during direct as well as cross-examination bears on the credibility and weight the trier of fact accords the witness's testimony. Moreover, observation of a witness on direct is important to the planning and execution of effective cross-examination. A prepared, concise statement read by counsel may speed up the hearing, but it is no substitute for the real thing. Lost is the opportunity for the trier of fact and counsel to assess the witness's strengths and weaknesses, recollection, and attempts at evasion or spinning the facts, etc.

Third, with a scripted statement, prepared and agreed to by one party in advance, comes the passage of time and with that lapse may come the party's unyielding acceptance of the script. Lost to cross-examination is the opponent's ability to *immediately* test and dissect adverse testimony.

█ Fourth, we are cognizant that the reviewing court in *County of Alameda v. Moore* (1995) 33 Cal.App.4th 1422, 1427 [40 Cal.Rptr.2d 18], discussed in dicta the family law court practice of using nonstipulated offers of proof. That matter, of course, did not involve the fundamental right to parenting. We are also well aware that juvenile courts can establish local rules to expedite and administer their court proceedings. However, those rules must be reasonable and consistent with existing law. (See *In re Jeanette H.* (1990) 225 Cal.App.3d 25, 33–35 [275 Cal.Rptr. 9].) As a commentator recently concluded, "[s]ince the law is clear that non-stipulated offers of proof are not evidence, a local practice or rule that purported to make them evidence would be in conflict with existing law and invalid. Further, measures to expedite the hearing process cannot override the requirement of providing litigants due process . . . ." (Seiser, *supra*, § 2.110[19], p. 2-205.)

The question becomes, how do we evaluate the procedural defect in this case? First, we are convinced that the defective procedure did not amount to a structural error in the trial mechanism requiring per se reversal. (See *In re Angela C.* (2002) 99 Cal.App.4th 389, 394–395 [120 Cal.Rptr.2d 922].) That being the case, what standard of prejudice should we employ?

█ Where the error is of a federal constitutional dimension, such as a violation of due process, courts have used the beyond a reasonable doubt standard of proof under *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. (See, e.g., *In re Angela C., supra,* 99 Cal.App.4th at pp. 394–396; *In re Laura H.* (1992) 8 Cal.App.4th 1689, 1695–1696 [11 Cal.Rptr.2d 285]; *In re Stacy T.* (1997) 52 Cal.App.4th 1415, 1426, fn. 9 [61 Cal.Rptr.2d 319].) However, the beyond a reasonable doubt standard of persuasion does not apply in dependency proceedings. On the other hand, the clear and convincing standard of persuasion is applicable at

various phases throughout a dependency. (E.g., § 361, subd. (c) [removal of child from physical custody of parent]; § 366.21, subd. (e) [scheduling § 366.26 hearing upon finding (1) parent of child under three years on date of initial removal failed to participate and make substantive progress, (2) whereabouts of parents still unknown, (3) parent has not visited, or (4) parent convicted of felony indicating parental unfitness]; § 366.21, subd. (g)(1)(C) [scheduling § 366.26 hearing at 12-month review upon finding that reasonable services offered or provided]; § 366.26, subd. (c)(1) [finding that child will be adopted].) Therefore, since most constitutional infringements in dependency cases will stem from a single act or hearing, it is fitting that the harmless error standard should be that of clear and convincing evidence. (See Seiser, *supra*, § 2.194[2], p. 2-367.) Employing this standard honors "both the special nature and purpose of dependency proceedings as well as the importance of the right to parent, and assigns an increased significance to the federal constitutional error established." (*Id.,* § 2.194[2], p. 2-368.)

Here, use of the mandatory offer of proof procedure was harmless under the clear and convincing standard and would also be harmless under *Chapman.* First, father *did* have an opportunity to cross-examine the witness and to observe some direct examination propounded to clarify statements to which he objected. More importantly, time had run out on this dependency. There was nothing more that the court, in its discretion, jurisdiction, and conscience could do but proceed to permanency planning.

### 2. *Denial of Additional Hearing Time*

Father also asserts that the juvenile court abused its discretion in limiting the hearing to three hours and denying his request for additional hearing time. He maintains that when the court stated that counsel had represented that the hearing would be half a day, counsel tried to make a record that the time frame was not his estimate, but that of the other side. There was no prejudicial abuse of discretion here. First, two-thirds of the time was devoted to his cross-examination of Granados. Second, no other witness was called or expected to testify. Third, the numerous items detailing what counsel would have pursued had he had more time, focus on failures of the social worker to assist the family. The ultimate issue here was father's inability to secure housing and income to support his daughters. He conceded he was not ready to have them back. And again, the court could not in its discretion, jurisdiction or conscience do anything but forward the case to the permanent plan for guardianship.

## III. DISPOSITION

The petition of father for an extraordinary writ is denied on the merits. (§ 366.26, subd. (*l*); Cal. Rules of Court, rules 1435(b), 1436.5(c); see *In re Julie S.* (1996) 48 Cal.App.4th 988, 990–991 [56 Cal.Rptr.2d 19].) This decision shall be final immediately.

Kay, P. J., and Sepulveda, J., concurred.