Filed 10/29/13  T.M. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| T.M.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>        Respondent;<br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al.,<br><br>        Real Parties in Interest. | D064356<br><br>(San Diego County<br>Super. Ct. No. SJ12617) |

PROCEEDINGS for extraordinary relief after reference to a Welfare and

Institutions Code section 366.26 hearing.  Garry G. Haehnle, Judge.  Petition denied;

request for stay denied.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Dependency Legal Group of San Diego and Tracy M. Dietrich-De Soto for Real Party in Interest T.M., a Minor.

T.M. (the mother) petitions for writ review of juvenile court orders terminating her reunification services regarding her son, T.M., and referring the matter to a Welfare and Institutions Code section 366.26[1] hearing. She contends the evidence presented was insufficient to support the court's finding there would be a substantial risk of detriment to T.M. if he were returned to her custody. We deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

T.M. first came to the attention of the San Diego County Health and Human Services Agency (the Agency) in 2007 when he tested positive for marijuana at birth and the mother admitted marijuana use. The mother did not follow through with the voluntary services offered to her at that time and the case was closed. In July 2011, the family again came to the Agency's attention when there was domestic violence in the family home. On July 22, the Agency petitioned on behalf of four-year-old T.M. under section 300, subdivision (b), alleging he was at substantial risk because of domestic violence between the mother and her boyfriend. The petition alleged the boyfriend had hit and slapped the mother in T.M.'s presence, and, then, although the mother agreed not

---

1    All further statutory references are to the Welfare and Institutions Code.

2

to have further contact with the boyfriend, there was another incident of domestic violence. The petition further alleged the mother refused to let the Agency know where T.M. was located. T.M. was not located until August 29, when he was taken into protective custody and detained.

At the jurisdictional/dispositional hearing on September 20, 2011, the court found the allegations of the petition to be true, declared T.M. a dependent of the court, removed him from the mother's custody and ordered him placed in relative care. T.M. was placed with his maternal grandfather (the grandfather). The mother's services included participation in a domestic violence program, general counseling, parenting education, substance abuse treatment, drug testing and a 12-step program.

The social worker reported the mother was slow to begin services and was difficult to reach. In December 2011, she started therapy. Her therapist reported she was open during their sessions and had developed some insight into the poor choices she had made in her life. She also started domestic violence treatment and substance abuse treatment. At the six-month review hearing on March 20, 2012, the court found she had made some progress and continued services.

During the following reporting period, the mother had clean drug tests, and was an active participant in her domestic violence group but, her therapist said, although the mother knew the right words to say, she had a limited understanding of how domestic violence had affected T.M., and the therapist was concerned about her judgment and lifestyle. The mother's attendance in domestic violence treatment was inconsistent and, in June 2012, she denied the domestic violence had occurred. However, the grandfather

3

said her visitation had become more regular and visits were positive for T.M. At the 12-month review hearing on September 13, 2012, the court found the mother had made significant progress and continued services to the 18-month date.

Subsequently, the mother's therapist reported the mother had participated in 38 therapy sessions and by September 2012, had completed her goals and made a safety plan. She also attended parenting classes, completed domestic violence and substance abuse treatment programs, attended Alcoholics Anonymous and Narcotics Anonymous (NA) meetings and had clean drug tests.

In February 2013, the social worker requested continuing the 18-month hearing to address the mother's housing issues. The social worker said the mother lived with the maternal grandmother, but believed that home was not an appropriate place for T.M., and mother did not want to have overnight visits at the grandfather's home. Mother refused to consider living in a shelter and requested resources to help her with housing and assistance with a deposit, but she delayed in providing details of what she needed and said she had been waiting for the social worker to contact her. The social worker attempted to call the mother several times in February, March and April 2013, but could not reach her. In April and May, when the social worker asked her to drug test, she did not do so.

The mother continued to have difficulty finding a place to live and the social worker had trouble contacting her. In July 2013, she told the social worker she was living with a friend and would provide information about her new residence later. The mother's drug test that day was a diluted sample positive for marijuana, but she denied

4

using the drug and said she did not understand why she had tested positive. Because of the positive drug test, visits returned to being supervised. The mother told the social worker she had been living with her friend since February, but had not suggested having overnight visits there. The grandfather said he was concerned about T.M. returning to the mother and did not believe she was ready for the responsibility of caring for him.

At the 18-month hearing on July 23, 2013, the parties stipulated that if the social worker were to testify, she would say the mother had provided an application to rent an apartment, but had lied about her income on the application, and the receptionist at the apartment complex said there were no two-bedroom apartments available there. The mother's friend had been approved for visits to occur at her apartment.

If called to testify, the mother would state the home she shared with her friend had been approved for visitation. She would say she had not told the social worker about her current residence because she did not think she was allowed to have a roommate. She also would say she and her roommate planned to move to a two-bedroom home and, if T.M. were placed with her, she would do whatever the Agency asked of her.

After considering the evidence and argument by counsel, the court found the mother had been offered reasonable services and had made good progress, but returning T.M. to her care would create a substantial risk of detriment. It continued T.M. in relative care, terminated services and set a section 366.26 hearing.

The mother petitioned for review of the court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) This court issued an order to show cause, the Agency responded and the parties waived oral argument.

5

DISCUSSION

The mother contends the evidence was insufficient to support the court's finding there would be a substantial risk of detriment to T.M. if he were returned to her custody. She maintains she adequately addressed the issues leading to his dependency. She argues the other issues upon which the court relied, including her marijuana use, bringing T.M. home late on one occasion, dishonesty on her rental application and her lack of communication with the social worker, do not support the finding.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) "[W]e must indulge all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Section 366.22, subdivision (a) provides at an 18-month hearing:

> "[T]he court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."

Unless the court finds extraordinary circumstances are present as described in section 366.22, subdivision (b), at the 18-month hearing, the court must return the child to the parents or terminate services and set a hearing to determine the child's permanent plan. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 596.) At the time of the

6

18-month hearing, the focus shifts to the needs of the child for permanency and stability. (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510 (*Denny H.*).) Compliance with the technical requirements of a reunification plan by itself will not automatically result in return of the child.  (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1143.)  "[T]he decision whether to return a dependent child to parental custody is not necessarily governed solely by whether the parent has corrected the problem that required court intervention."  (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1344 (*Jennifer A.*).)  "[T]he court must consider the effect such return would have on the child."  (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 894.)

Although the mother participated in the services required by her reunification plan, the evidence showed there would be a substantial risk of detriment to T.M. if he were returned to her custody.  Two of the objectives of the mother's court-ordered case plan were for her to stay free from the use of illegal drugs and show she was able to live free from drug dependency.  She was ordered to participate in substance abuse services, including attend a substance abuse treatment program, submit to random drug tests and attend NA meetings.

The mother participated in nearly two years of services, but she did not show she had reached her goal of remaining free from drug use and drug dependency.  She completed drug abuse treatment in February 2013, but there were indications that after she finished the program she returned to using marijuana.  She declined to drug test on February 27, 2013, and had no tests in April because she did not stay in contact with the social worker and did not return phone calls.  She said she would test on May 8, but did

7

not do so.  She showed proof that she had attended NA meetings only from May 2 to June 30.  In July, 23 months after the dependency case began, she tested positive for marijuana.

This case contrasts with the situations in *Jennifer A.* and *In re Destiny S.* (2012) 210 Cal.App.4th 999 (*Destiny S.*), where the reasons for removal were not closely linked with the reasons for not returning the child or for establishing dependency jurisdiction. In *Jennifer A.,* two young children had been removed from their mother's custody when she left them alone and unattended.  The reviewing court noted the evidence did not link her drug use with her lapse of judgment in leaving them alone, and held substantial evidence did not support finding that returning the children to her care would create a substantial risk of detriment.  (*Jennifer A., supra,* 117 Cal.App.4th at pp. 1328, 1345-1346.)  In *Destiny S.,* the court reversed a judgment of dependency, concluding there was no substantial evidence the child was at risk of physical harm from the mother's drug use, noting that marijuana use without more is not a reason to bring children within juvenile court jurisdiction.  (*Destiny S.,* at pp. 999, 1003-1004.)

The mother's case is different.  Her drug use was closely intertwined with the initial reason for T.M.'s dependency, and substance abuse treatment was a part of her court-ordered reunification plan.  Mother's claim there was no evidence linking her marijuana use to any detriment to T.M. and that she had completed substance abuse treatment and had only one positive drug test and some missed tests is disingenuous. T.M. and the mother first came to the Agency's attention at the time of T.M.'s birth in 2007 when they tested positive for marijuana.  Four years later, when police arrived on

8

June 15, 2011, to investigate a domestic violence incident, they noticed a strong odor of marijuana. The next day the social worker and the apartment manager also noticed the smell, and the social worker found marijuana pellets on the floor along with three lighters. T.M. said he had seen the mother and the boyfriend smoke "weed." The mother's marijuana use was an issue from the beginning of the case and evidence of her continued use after two years of services was of serious concern.

A court is required to give "substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).) "[A]t the 18-month benchmark, the focus of a dependency proceeding shifts to the child's needs for permanency and stability." (*Denny H., supra,* 131 Cal.App.4th at p. 1510.)

T.M. was removed from the mother 23 months before the hearing. From February 2013 until the 18-month hearing was finally held in July the social worker had asked for continuances so the mother could obtain suitable housing and show she was able to provide care for T.M. At the time of the 18-month hearing, visitation was supervised because of the mother's positive drug test. The social worker inquired about resuming unsupervised visits, but the mother did not want to start them at the grandfather's home. The mother still did not have a stable home for T.M., was unemployed, did not take advantage of the social worker's efforts to help her obtain suitable housing, was dishonest on her rental application, would not consider living with T.M. in a homeless shelter and showed poor judgment when she brought him home three hours late from a visit, causing

9

him to miss school the next day. The grandfather was concerned that the mother did not have a plan for T.M.'s return and worried that she was not capable of caring for him.

Although the mother made progress in her domestic violence prevention program and in therapy, she appeared not to have overcome her substance abuse problem and was not able to provide a safe, secure and permanent home for T.M. Substantial evidence supports the court's finding that T.M. would be at substantial risk of detriment if he were returned to the mother's custody.

DISPOSITION

The petition is denied. The request for stay is denied.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

10