Filed 3/2/15  Sandy D. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SANDY D.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Real Party in Interest. | F070541<br><br>(Super. Ct. Nos. 130364, 130365, 130534)<br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Louie L. Vega, Judge.

Michelle R. Trujillo for Petitioner.

No appearance for Respondent.

Theresa A. Goldner, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Kane, Acting P.J., Poochigian, J. and Franson, J.

Sandy D., mother, petitions this court pursuant to California Rules of Court, rule 8.542 to set aside the juvenile court's order terminating reunification services to her children N., B., and C., and setting a permanency hearing under Welfare and Institutions Code section 366.26.[1]  She contends: (1) there was no substantial evidence supporting the finding that there would be a substantial risk of detriment to the children if they were placed in her care; and (2) the juvenile court should have provided her with additional reunification services.  We reject the contentions and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother came to the attention of the Kern County Department of Human Services (DHS) in March of 2013 when she left her children, 20-month-old B. and six-month-old C., in the care of maternal grandmother, whose home was alleged to be a health and safety hazard.  Mother admitted using drugs 2 to 3 times per week and sometimes daily.  Mother was homeless and had nowhere to go, so she agreed to have the children placed into protective custody.

### *Detention Hearing for B. and C.*

The section 300 petitions filed March 11, 2013, alleged that B. and C. had suffered, or there was a substantial risk that the children would suffer, serious physical harm or illness due to mother's inability to provide regular care for her them due to her substance abuse.  The petition further alleged that the children were at substantial risk of harm due to the condition of grandmother's home.

At the March 12, 2013, detention hearing, B. and C. were detained.  Supervised visits between mother and the children were to occur twice weekly.  A jurisdiction hearing was set for April 17, 2013.

---

[1]  All statutory references are to the Welfare and Institutions Code unless otherwise stated.

*Jurisdiction Hearing for B. and C.*

The report prepared in anticipation of the jurisdiction hearing repeated the allegations provided for the detention hearing regarding maternal grandmother's home and mother's substance abuse. The social worker reported that she met with mother prior to the detention hearing and provided her with an initial case plan. Mother stated that she began using marijuana and methamphetamine at age 12 and would require inpatient substance abuse treatment. She also revealed that another one of her children, nine-year-old N., was living with his father since January of 2013, due to her substance abuse. Domestic violence counseling was added to mother's case plan after mother revealed a history of domestic violence with both fathers of her children.[2]

The report stated that, between the detention hearing and the upcoming jurisdiction hearing, mother had been referred to inpatient substance abuse treatment but had not enrolled and had decided on her own to attend a different program. She had also already missed two scheduled visits with her children. A supplemental report stated that mother had been arrested at the end of March 2013, when she was found to be in possession of marijuana and drug paraphernalia.

At the April 17, 2013, jurisdiction hearing, the matter was submitted after dismissing the allegation concerning the lack of safety in maternal grandmother's home. The juvenile court found the remaining allegation true and the matter was set for disposition on May 17, 2013.

*Detention Hearing for N.*

In the meantime, after DHS learned that mother had her son N. with her in a homeless shelter, N. was placed into protective custody due to his parent's alleged substance abuse and his father's failure to protect him from mother. Following a

---

[2]     Frank D. is the father of B. and C.; Joshua D. is the father of N. Neither father is a party to this writ.

detention hearing on April 25, 2013, N. was detained and jurisdiction and disposition hearings set for May 30, 2013.

During the course of the investigation, the social worker learned that mother had been asked to leave the shelter because she "laid hands on another person." It was also discovered that mother had been referred to child protective services in Nebraska in 2005 and N. detained when mother left him without resources in the care of a custodian.

At a visit on April 29, 2013, mother was extremely agitated and aggressive toward the social worker in front of the children. Mother entered inpatient substance abuse counseling later that day. On May 10, 2013, mother said she had been clean and sober for 17 days, the longest period of sobriety since the birth of C.

*Jurisdiction Hearing for N.*

At the jurisdiction hearing held May 30, 2013, the juvenile court found the allegations of the petition true and ordered a psychological evaluation for mother. A combined disposition hearing was ordered for all three children.

*Disposition Hearing for N., B. and C.*

The report prepared in anticipation of the disposition hearing stated that mother underwent a psychological evaluation on July 24, 2013. She was found to be suffering from chronic Polysubstance Abuse/Dependence and Mood Disorder, Not Otherwise Specified, and met the criteria for child neglect. The doctor who performed the evaluation opined that mother's mental disorders impacted her ability to adequately provide for or maintain the safety and welfare of her children. However, the doctor opined that mother could meaningfully participate in reunification services and recommended evaluations for individual and family counseling and medication, substance abuse treatment, random drug testing, and parenting and anger management classes.

In September of 2013, mother was making progress in her substance abuse treatment and was scheduled to complete the program in February of 2014. She also

4.

completed parenting and neglect classes in September of 2013, and submitted clean drug tests from May to September 2013.

The report stated that mother and the children were referred to Child Guidance Clinic for "guided visitation" due to visitation issues. The referral was prompted by an incident at a visit on September 23, 2013, where mother exhibited poor interaction with N. in particular, and the visit had to be terminated due to mother's uncooperative behavior.

Due to a delay in the psychological evaluation, the disposition hearing was eventually heard on October 8, 2013. All three children were removed from the custody of their parents. Family reunification services for mother included anger management, substance abuse treatment, mental health evaluation and treatment, and random drug testing. A section 366.21, subdivision (e) six-month review hearing was scheduled for April 8, 2014.

*Six-Month Review Hearing*

By the time of the six-month review hearing on April 8, 2014, mother had completed her substance abuse and anger management counseling and tested negative throughout the entire review period. In a mental health evaluation done in February of 2014, mother was described as having severe mood swings and chronic bipolar affective disorder, generalized anxiety disorder, major depressive disorder and amphetamine induced mood disorder. She was prescribed various psychotropic medications.

Mother continued visiting the children. Her overall demeanor and attitude at visits was uncooperative and extremely negative and angry, especially towards N. By the time of the review hearing, mother was living in a homeless transitional housing program that did not allow children.

The juvenile court found that return of the children would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. The juvenile

court found that mother had made "moderate progress" in her case plan and reunification services were continued, including "counseling for guided visitation."

*12-Month Review Hearing*

By the time of the 12-month review hearing on May 7, 2014, mother had participated in and completed her court-ordered case plan, but had not obtained housing or improved the quality of her visitation with the children. At the recommendation of DHS, the juvenile court continued reunification services for mother, finding that mother had made "substantial progress" in her case plan.

*18-Month Review Hearing*

The report prepared in anticipation of the December 2, 2014, 18-month review hearing stated that mother's progress had taken a turn for the worse. She had not been compliant in taking her psychotropic medication and had not refilled her prescription since February of 2014. Beginning in March of 2014, mother and the children had "visit coaching," but mother attended only seven of the 12 sessions. She missed five consecutive weeks of visits with the children in June and July of 2014. During visits, she continued to be short-tempered, impatient and to curse, and she had limited interaction with N. and continued to respond negatively to him. She failed to drug test in June 2014.

By August of 2014, mother began a second session of "visit coaching." An additional two weeks was added to work with mother and N. Since October 1, 2014, mother had attended every visit. Mother reportedly stopped taking some of her medications. The report stated that visits were not improving and opined that she was clearly unable to parent her children safely and effectively.

At the review hearing, mother testified that, while she had gone off her medications for awhile, she had done so because she thought she was "stable." She had been back on her medications for one month.

The social worker, who monitored mother's visits, testified that she had concerns for the physical safety of the children if returned to mother, citing the last visit where

mother walked out when she got frustrated. The social worker opined that even when mother had supportive people around her, she was still unable to control the situation. The social worker thought mother's behavior at visits with medication was only "[a] little bit better" than without.

The social worker testified that she was concerned for the children's physical safety in the event mother becomes frustrated and upset. She observed that mother did not utilize the skills she had been taught in parenting classes. Although she acknowledged that the children had not been injured during a visit, she questioned mother's ability to protect the children during an unsupervised visit or if they were returned home. The social worker had observed the children in emotional distress at times during visits, and opined that mother was not able to handle typical two or three-year old behavior. She feared the possibility that the children would be at risk of physical harm if returned to mother. The social worker believed N. in particular was at emotional risk of harm if returned to mother because he is very "parentified," meaning he takes the parent role, and he takes personal responsibility for B. and C. and shoulders much of the blame when things go wrong.

Counsel for DHS argued that, while mother was back on her medication and had done better for one month, "one month compared to the last 18-plus months is not enough to overcome the department's concern for the risk of detriment to the children."

The juvenile court agreed with the reasoning of the DHS. It found that mother was provided reasonable reunification services and had made "moderate progress" and efforts in her case plan, but that there was a substantial risk of detriment to the children if they were returned to mother. The juvenile court then terminated reunification services and set a section 366.26 permanent planning hearing for April 1, 2015.

## DISCUSSION

### I. SUBSTANTIAL RISK OF DETRIMENT TO THE CHILDREN

Mother contends there was no substantial evidence to support the finding that there would be a substantial risk of detriment to the children if they were placed in her care. We disagree.

Section 366.22, subdivision (a), provides in part that the juvenile court "shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." We review a finding of substantial risk of detriment under the substantial evidence standard, wherein all reasonable inferences must be drawn in support of the juvenile court's findings and the record must be viewed in the light most favorable to the juvenile court's orders. (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569-1570; *In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The petitioner bears the burden of demonstrating that there is no substantial evidence to support the judgment. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Here, mother had a history of substance abuse and mental health issues, which led to removal of the children in the first place. Mother participated regularly in her case plan, which included court-ordered counseling, drug treatment, mental health treatment, parenting classes, anger management classes, and visitation counseling. And yet mother failed to progress in managing her mental health issues or visitation and continued to be emotionally unstable. As noted in *In re Dustin R.* (1997) 54 Cal.App.4th 1131, while compliance with a reunification plan is an indicia of progress toward returning a child to a parent's custody, it is not the court's sole concern. (*Id.* at pp. 1139-1140.) Instead, in addition to a parent availing him or herself of the services provided, "the court must also

8.

consider progress the parent has made towards eliminating the conditions leading to the children's placement out of home." (*Id.* at pp. 1141-1142.)

Mother initially made progress during the first two six-month review periods, and it appeared as if the children would be returned to her custody at some point. However, during the last review period, mother digressed: she failed to take her psychotropic medication, thinking she did not need it; she missed numerous visits; and at one point, she failed to drug test. Mother claimed she did not attend several visits because she was "in a rut." Her interactions with N. remained contentious, and she was short-tempered, impatient and continued to use inappropriate language during visits with the children. She still had not progressed to unsupervised visits. Mother continued to demonstrate that she was not able to manage her mental health, which impaired her emotional stability and her ability to adequately care for her children.

There was substantial evidence supporting the juvenile court's finding that there would be a substantial risk of detriment to the minors if they were returned to mother's care.

## II.  DENIAL OF REUNIFICATION SERVICES

Mother next contends that, if we should find that there is substantial evidence of ongoing substantial risk, the juvenile court should have provided her with additional reunification services, pursuant to section 366.22, subdivision (b) and because mother had "special needs." We conclude the juvenile court, having found mother was provided reasonable services, had no choice under section 361.5, subdivision (a)(4) and 366.22, subdivision (b) but to terminate reunification services. We also conclude that the juvenile court did not abuse its discretion under section 352, subdivision (a) in not continuing the 18-month review period to provide mother further services.

Section 361.5, subdivision (a)(4) sets forth the time limits on reunification services as relevant here:

9.

"[C]ourt-ordered services may be extended up to a maximum time period not to exceed 24 months after the date the child was originally removed from physical custody of his or her parent … if it is shown, at the hearing held pursuant to subdivision (b) of Section 366.22, that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period.  The court shall extend the time period only if it finds that it is in the child's best interest to have the time period extended and that there is a substantial probability that the child will be returned to the physical custody of his or her parent … who is described in subdivision (b) of Section 366.22 within the extended time period, or that reasonable services have not been provided to the parent …."

Section 366.22, subdivision (b), in turn, describes such a parent as one "who is making significant and consistent progress in a court-ordered residential substance abuse treatment program, or a parent recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security and making significant and consistent progress in establishing a safe home for the child's return …."

Here, mother fails to show that she is a parent described in subdivision (b) of section 366.22.  Consequently, the juvenile court lacked statutory authority to continue reunification services for mother beyond the 18-month review hearing.

Nor do we find that the juvenile court abused its discretion under section 352, subdivision (a) in deciding not to continue the 18-month review hearing so as to afford mother additional time to reunify.  The juvenile court may, in the best interests of the child and for good cause, exercise its discretion to grant a continuance of any hearing, including the 18-month hearing, pursuant to section 352, subdivision (a).  (See *Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510-1511.)  Thus, an 18-month hearing may be continued if "no reasonable reunification services have ever been offered or provided to a parent" (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1017), and the time frame for reunification services may be extended if "no reunification plan was ever developed …."  (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.)  Further, in *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1797-1799 (*Elizabeth R.*), reunification

10.

services were extended because the mother was hospitalized during much of the reunification period and had otherwise substantially complied with the reunification plan. But absent such "extraordinary" situations, "the juvenile court's extension of services beyond 18 months [is] an abuse of discretion and in excess of its jurisdiction, as limited by statute." (*Denny H. v. Superior Court, supra,* at p. 1511.)

Here, reasonable reunification services were offered and there were no extraordinary circumstances justifying extending services beyond the 18 month period. Mother, citing *Elizabeth R.,* asserts extended services are warranted because she has "special needs" due to psychological problems and that she was making substantial progress in the court-ordered treatment. But unlike the mother in *Elizabeth R.,* who was not able to participate in reunification services because she was hospitalized for all but five months of the reunification phase (*Elizabeth R., supra,* 35 Cal.App.4th at p. 1777), mother here was never hospitalized. Nor was there any evidence that she was not able to participate by some external factor in court-ordered counseling and treatment.

Under these circumstances, the juvenile court did not abuse its discretion in failing to extend reunification services beyond the 18-month period.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.