Filed 1/17/14  In re B.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.V., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E058738 |
| Plaintiff and Respondent, | (Super.Ct.No. J237589) |
| v. | OPINION |
| R.V. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Respondent, father.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Respondent, mother.

1

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

I

INTRODUCTION

Mother and father (parents) appeal from the juvenile court order terminating their parental rights to their son, B.V. (born in 2006) under Welfare & Institutions Code section 366.26.[1]  Parents contend the trial court erred in skipping the 12-month review hearing (§ 366.21, subd. (f)), in violation of their due process rights.  Father also contends he was denied effective assistance of counsel because his attorney (1) did not object to the court setting the 18-month review hearing without first holding a 12-month hearing and (2) his attorney conceded that father could not gain custody of B.V. at the 18-month review hearing.  Mother joins in father's arguments on appeal.

The San Bernardino County Department of Children and Family Services (CFS) argues that parents forfeited these objections by not raising them in the juvenile court and are barred from raising their objections on appeal under the waiver rule because they did not seek writ relief in connection with the 18-month hearing orders.  We agree parents forfeited their objections and are barred from raising them on appeal.  Furthermore, any error in not holding a 12-month hearing was harmless error.  The judgment is affirmed.

_____

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

FACTS AND PROCEDURAL BACKGROUND

Parents, who never married, had a history of domestic violence and substance abuse. The instant juvenile dependency proceedings arose when, on February 17, 2011, police arrested mother for possession of stolen goods. Joe, mother's boyfriend, was also arrested. At the time of their arrest, mother and Joe had been living together with B.V. for about two years. The police contacted CFS, which removed B.V. from mother and placed him in the care of his maternal great-aunt (great-aunt) and uncle.

While interviewing B.V., who was four and a half years old, the CFS social worker noticed B.V. had a bruise on his right cheek, a red raised mark on the left side of his forehead, and cuts on the right and left sides of his lip. When asked how B.V. received the injuries, B.V. said, "Joe did that" and "Joey did that too." B.V. said Joe slapped him and punched him, pointing to the left and right side of his top lip. When asked about the knot on his forehead, B.V. said he and Joe were play fighting and Joe socked him. The police informed CFS that mother and Joe had a history of domestic violence. CFS records showed there had been at least four referrals involving domestic violence. B.V.'s father was unavailable for an interview. B.V. told the social worker B.V. visited father on weekends.

Mother denied any domestic violence between her and Joe, but when the social worker showed her photos of mother having been severely bruised, mother said father had caused the bruises when B.V. was two years old.

*Detention Hearing*

CFS filed a juvenile dependency petition under section 300, subdivision (b), alleging that Joe had physically abused B.V., mother and Joe had engaged in domestic violence in B.V.'s presence, and father knew or should have known mother abused alcohol, which placed B.V. at risk of harm and impaired her ability to care for and supervise B.V. In addition, father had a history of violence and anger, which placed B.V. at substantial risk of harm and father knew or should have known B.V. was being physically abused by Joe but, nevertheless, left B.V. in mother's care.

On February 22, 2011, CFS filed a section 300 petition on behalf of B.V. At the detention hearing, the juvenile court ordered B.V. detained and to remain with his great-aunt. The court ordered reunification services and authorized monitored visitation for parents, twice weekly, for one hour per visit.

*Jurisdiction Hearing*

CFS reported in its jurisdiction/disposition report, filed on March 11, 2011, that during father's interview on February 28, 2011, he admitted he had been aware of the domestic violence between mother and Joe. Father had seen the bruises and marks on B.V.'s face. Father also knew that mother had an extensive history of abusing alcohol. Father acknowledged he and mother had an extensive history of engaging in domestic violence, including an incident in 2007.

During mother's interview on March 1, 2010, CFS learned that mother has a serious alcohol addiction but was in denial of her problem. Mother's substance abuse

4

began when she was 15 years old. Mother was physically abused by her stepfather, while her mother allowed it to occur. Her mother and stepfather engaged in domestic disputes, as well. Mother met father when she was 19 years old. After B.V.'s birth, mother and father engaged in physical and verbal altercations, leading to mother filing for restraining orders against father and seeking custody of B.V. Mother denied that Joe had abused B.V. She claimed B.V. was injured when visiting Joe's mother. Also, B.V. played rough. Mother acknowledged that many of her physical altercations occurred when she was drinking. She admitted she had been hospitalized as a result of a .20 blood alcohol content (BAC). She did not recall the incident but was told she fell off a balcony while B.V. was present. During another interview on March 29, 2011, mother minimized the domestic violence between her and Joe, and indicated she did not believe Joe physically abused B.V.

Father reportedly had a criminal history that included charges for assault and driving without a license in 2005, failure to provide child restraint in 2009, and assault in 2010. As of March 2011, father was on probation for three years, for committing an assault in 2010. Mother had been charged in 2002 for having a physical altercation with her mother. Mother's case plan included a domestic violence program, individual counseling, parent education, a substance abuse program, substance abuse testing and a 12-step Alcoholics Anonymous (AA) program. Father's case plan required him to participate in individual counseling, parenting, and weekly supervised visits.

During B.V.'s interview on March 21, 2011, by The Children's Assessment Center, B.V. said that Joe went to jail for stealing "phones, money, dollars and toys and he saw Joe do those things." B.V. also stated, as previously reported, that Joe physically abused him by hitting and punching him. Mother told Joe to stop and took him to the doctor when he started bleeding. B.V. said he observed Joe pushing mother down when he got mad at her for spilling beer on Joe.

At the jurisdiction/disposition hearing on May 9, 2011, the court sustained the petition as amended, ordered B.V. a dependent of the juvenile court, ordered family reunification services for parents, authorized four hours of supervised visitation per week for mother and one hour per week for father. The court further ordered that Joe was to have no contact with B.V.

*Six-Month Review Hearing*

CFS reported in the November 9, 2011 six-month status review report that parents were living with family members and participating in services. Visits with B.V. were going well and B.V. had adjusted well to living with his great-aunt and uncle. The court authorized parents to receive unsupervised visits once a week, for one hour, at a neutral location, with parents to visit B.V. separately.

On November 28, 2011, parents participated in juvenile dependency mediation. Mother agreed to continue domestic violence treatment, individual therapy, random testing, and attending Narcotics Anonymous/Alcoholics Anonymous meetings. Mother completed an after-care treatment program for substance abuse. Father agreed to

complete a domestic violence program, attend parent-child interactive therapy, and continue reunification services. It was further agreed mother would have weekly, unsupervised visits for a minimum of one hour, at a neutral location, and one night a week at the great-aunt's home, until B.V. went to sleep. Father would have weekly, unsupervised visits for a minimum of three hours, at a neutral location.

In December 2011, the parties participated in a pretrial settlement conference, which was continued to January 10, 2012. During the January 2012 conference, the juvenile court ordered additional updated case plans and further reunification services, and found that CFS had "provided reasonable services designed to overcome the problems leading to the initial removal and the continued custody of the child." The court authorized mother to receive weekly, unsupervised visits for a minimum of three hours, at a neutral location and one night a week at the great-aunt's home, until B.V. went to sleep. The court also authorized weekly, unsupervised day visits with father at his residence, upon completion of live scan of individuals living in his home. The court further set on June 25, 2012, the next hearing, described as an 18-month review hearing under section 366.22.

At a nonappearance review hearing in February 2012, the court ordered compliance with parents' amended case plans. The court also ordered mother to obtain an AA sponsor and attend AA meetings five times a week. At a nonappearance review hearing in April 2012, the court ordered visitation between mother and B.V. changed to supervised visitation because mother was arrested in January 2012, for public

7

drunkenness and disorderly conduct, and mother had not found an AA sponsor. Also, mother had been terminated from therapy because of her high absenteeism, and she tested positive for alcohol in March 2012. At the April 2012 hearing, the juvenile court confirmed the section 366.22 hearing on June 25, 2012.

*18-Month Hearing*

CFS recommended in its 18-month hearing report, filed on June 19, 2012, that the juvenile court terminate reunification services. B.V. had been living with his great aunt and uncle since his removal from mother's care on February 17, 2011. Mother continued to minimize her drinking problem and had not provided any records of AA attendance. Although mother claimed she no longer had a relationship with Joe and there was a court restraining order against him, mother continued to maintain contact with him. B.V.'s care providers reported they suspected mother was drinking while at their home for visits. On May 30, 2012, mother frequently went outside to smoke. The care providers noticed her speech became slurred. They followed her out to the car and found beer cans in her car, terminated her visit, and requested her to leave. The social worker reported that mother had not put into practice any of the tools provided in her reunification services programs. She continued to drink and remained involved with Joe in a toxic relationship. On January 11, 2012, Joe was arrested for domestic violence involving mother, and mother was arrested for public intoxication. A police officer observed Joe punching mother while Joe and mother were sitting in a car. Joe was on parole at the time and there was a restraining order prohibiting Joe from contact with mother.

8

CFS reported that father had stopped going to therapy and displayed a very immature, childlike relationship with B.V. Father did not provide any parental structure or guidance and told B.V. he did not have "'any rules and he can do whatever he wants'" when B.V. is at father's home. Father allowed B.V., who was six years old, to watch an "R" rated movie containing a lot of violence and profanity. Afterwards, B.V. was unable to sleep for the next five nights. Father also took a photo of B.V. posing as if giving someone the "middle finger." B.V. reported he and father were outside throwing glass tiles, causing B.V. to cut his hand. Father was living with B.V.'s paternal grandfather (grandfather). Both parents had recently become employed.

The social worker concluded in the June 2012 status report that, "At this point the case is at the statutory time limit for services and neither parent is ready to assume the role of parent on a full time basis. Mother continues to ignore and or minimize the degree that alcohol has on her life. Father presents as a 'buddy' rather than a parent and is not able to provide the structure that is needed for a young child." The social worker therefore requested the court to set a section 366.26 hearing. Mother was consistently visiting B.V. and the visits went well. B.V. reportedly enjoyed his visits with mother and father but looked forward to being cared for by his great-aunt and uncle, who provided safety, structure and support.

B.V.'s great-aunt reported in the Caregiver Information Form (JV-290), filed on June 20, 2012, that father did not visit B.V. during the first five months B.V. lived with great-aunt and currently was only visiting B.V. every other week. On one occasion,

9

when mother and father did not show up for a scheduled visit, B.V. cried and wanted to know "how could they let him down." Parents were also an hour and a half late to B.V.'s birthday party in 2011. On another occasion, father showed up over an hour late to a visit in January 2012. B.V. exhibited aggressive behavior after visiting with father, and father took B.V. to grandfather's home, even though the home had not been approved for visitation. B.V.'s great-aunt reported that she was concerned that father's bigoted involvement in "White Pride" would have a negative impact on B.V. Father had posted on a social network site a picture of B.V., with the caption, "Salute the General White Pride World Wide." Father continued to have serious anger issues and had not dealt with his domestic violence issues. Great-aunt was concerned father might lose control and harm B.V. Great-aunt believed mother continued to have problems with alcohol and it was unlikely she would overcome her alcohol problem because she was in denial. Mother also was still involved with Joe.

The 18-month hearing was continued to July 26, 2012, for a contested hearing. At the hearing on July 26, 2012, father testified he had been living in an apartment with grandfather. Grandfather had a criminal history, which included incarceration for violent offenses. Father admitted he had not engaged in any counseling since January 2011. After briefly consulting with father, father's attorney informed the court that father was aware that the hearing was a section 366.22 hearing, which meant the court was going to determine whether B.V. would be ordered returned to parents and whether reunification services would be terminated. Father's attorney acknowledged that B.V. could not be

returned to father because he was living with grandfather, who had a criminal record. In addition, father had not completed counseling. Father's attorney requested increasing father's unsupervised visits and objected to terminating reunification services.

Mother's attorney also acknowledged the hearing was a section 366.22 hearing, which meant "[w]e're out of time." Mother's attorney stated that mother did not have appropriate housing, although she had recently started a new job. Mother objected to termination of services and requested visitation remain the same.

The juvenile court again found that CFS had provided reasonable services and that CFS had complied with the case plan by making reasonable efforts to return the child to a safe home and to complete whatever steps were necessary to finalize the permanent placement of the child. The court further found that parents failed to participate regularly and make substantive progress in their treatment plans. The court authorized unsupervised visits for father twice a month, and supervised visits for mother twice a month. The court terminated parents' reunification services and set a section 366.26 hearing, with a recommended permanent plan of legal guardianship. The court also advised parents of their rights to seek appellate review of the court's July 26, 2012 order by filing a petition for writ review. Parents did not petition for writ relief from the order.

*Section 366.26 Hearing and Section 388 Petition*

In November 2012, the juvenile court ordered the section 366.26 hearing continued because CFS had changed their recommended permanent plan from legal

11

guardianship to adoption. Because of difficulty notifying father, the hearing was continued again to May 9, 2013.

CFS reported in its March 2013, section 366.26 hearing report that B.V. had lived with his prospective adoptive parents (great-aunt and uncle) since February 17, 2011. He had bonded with them and had adjusted well. B.V. knew who his birth parents were but recognized his great-aunt and uncle as his parental figures. Great-aunt and uncle had known B.V. since his birth and wished to adopt him, and B.V. emphatically stated he wanted them to do so.

B.V. had no current medical issues, was meeting his developmental milestones, and was doing very well in school. B.V. became aggressive for a couple of days after his twice monthly visits with father. Father acted as a "buddy," rather than a parent, with B.V. and let him do whatever he wanted. When the social worker discussed visitation concerns with father, he became upset, yet did not follow through with counseling. Mother was not consistent with her visits. She did not regularly visit or make phone contact. B.V. viewed mother's visits as "play dates" and often asked, "why is she coming?" Mother was reportedly homeless, unable to support herself, and living a transient lifestyle.

At the section 366.26 hearing on May 9, 2013, the court continued the hearing to the afternoon because parents contested the matter and wanted to call B.V. as a witness. During the noon recess, mother filed a section 388 petition, requesting the court to vacate the July 26, 2012 order terminating reunification services and setting the section 366.26

12

hearing. Mother alleged in her section 388 petition that her circumstances had changed in that she had obtained stable housing and had been consistently visiting B.V. Attached to mother's section 388 petition were her 2011 certificates of completion of substance abuse, domestic violence, and parenting programs.

After hearing argument, the juvenile court denied mother's section 388 petition, noting that mother's attached certificates were dated prior to the July 2012 order terminating reunification services. The court therefore concluded there were no changed circumstances and denied mother's section 388 petition.

Upon resuming the contested section 366.26 hearing, father testified that he had unsupervised, eight-hour visits with B.V. every other weekend. He would spend quality time with B.V., going to breakfast, visiting grandfather, watching a movie or cartoons, going to the park, or playing basketball. Father requested the court order guardianship so that he would have an opportunity to regain custody. County counsel for CFS noted that, according to B.V.'s caregivers, father had visited B.V. only once per month between January 2013 and May 2013. Father disagreed but admitted he had not seen B.V. for the last few weeks because father was injured.

Mother testified she also preferred guardianship and acknowledged she was not visiting B.V. regularly because of transportation. Mother said that B.V. called her "mommy" and his caretakers "auntie" and "uncle." B.V.'s attorney told the court she had asked B.V. where he wished to live and B.V. initially said he wanted to live with his

13

friend from school and would not mind living with parents, but if he could not live with his parents, he wanted to stay with his great-aunt and uncle.

The juvenile court ordered parental rights terminated, with adoption as B.V.'s permanent plan. The court found that no exception to terminating parental rights applied because parents had not visited B.V. enough within the past six months. In addition, father had problems with parenting and taking responsibility, and parents did not have stable housing. On the other hand, B.V. was doing extremely well living with his great-aunt and uncle.

III

SKIPPING THE TWELVE-MONTH HEARING

Parents contend the trial court's failure to hold a 12-month review hearing deprived them of their procedural and substantive due process rights.

A. *Forfeiture of Objection*

CFS asserts that parents forfeited this objection by not raising it in the lower court. We agree. Neither mother nor father objected in the juvenile court to the court not holding a 12-month review hearing. When the court in January 2012 set the date for the next hearing, the court described the next hearing as a "two, two" hearing, also known as an 18-month review hearing under section 366.22. Parents did not object to setting an 18-month hearing, rather than a 12-month hearing.

At the nonappearance hearing on April 9, 2012, the court confirmed that the section 366.22, 18-month hearing would be held in June 2012, and provided notice to the

14

parties. In June 2012, CFS filed an 18-month status review report recommending termination of parental rights. The legal history section of the report showed that there had not been a 12-month review hearing, with the next hearing in June 2012 identified as an 18-month hearing. The notice of the hearing also stated that the hearing in June 2012 was an 18-month hearing. The notice further stated that CFS recommended terminating reunification services and setting a section 366.26 hearing. At the June 2012, 18-month hearing, parents requested a contested hearing, resulting in continuance of the 18-month hearing to July 26, 2012.

At no time did parents object to the court skipping the 12-month review hearing, including at the June hearing or at the July 2012 contested 18-month hearing. Counsel for CFS and parents all acknowledged the July 2012 hearing was a section 366.22, 18-month hearing. Despite numerous opportunities to object to skipping the 12-month hearing, parents did not object. As a consequence, parents forfeited their right to object on appeal to the court not holding a 12-month hearing.

"It is true that . . . a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.][] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule. [Citations.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "'[A]ny other rule would permit a party to . . . deliberately stand by in silence and thereby permit the

proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.'" (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.)

Had parents timely brought to the juvenile court's attention that the court had omitted the 12-month review hearing, and requested such a hearing, the juvenile court could have easily remedied this oversight. By not raising the issue in the juvenile court, the parties cannot now raise the deficiency for the first time on appeal. (*Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1149 [mother waived lack of notice argument by failure to object]; *In re Levi U.* (2000) 78 Cal.App.4th 191, 201 [mother waived due process claim]; *In re Janee J.* (1999) 74 Cal.App.4th 198, 209-210 [mother waived lack of notice claim]; *In re Heidi T.* (1978) 87 Cal.App.3d 864, 876 [failure to object in superior court waived issue of right to separate counsel for minors].)

We recognize that application of the forfeiture rule is not automatic. (*In re S.B., supra,* 32 Cal.4th at p. 1293.) However, this court's discretion to excuse the forfeiture is to be exercised "rarely and only in cases presenting an important legal issue." (*Ibid.*) In dependency cases, "the discretion must be exercised with special care. . . . Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance. (§ 366.26.)" (*Ibid.*) In *S.B.,* the Supreme Court determined that the Court of Appeal did not abuse its discretion in entertaining the mother's challenge, notwithstanding her failure to object below, because the issue of whether a juvenile court in a dependency case may delegate to the child's legal guardian

16

the authority to decide whether a parent may visit the child was an important issue of law that had divided the Courts of Appeal at that time. (*Id.* at pp. 1292-1294.)

Parents' claim here is not on par with that addressed in *In re S.B.* The issue of inadvertently failing to conduct a 12-month review hearing is not a new, significant issue of first impression or one dividing the Courts of Appeal. There is no dispute among the courts or parties that the juvenile court normally should conduct a 12-month hearing. Failure to provide such a hearing does not constitute reversible error in the instant case because the parties could have easily brought such oversight to the juvenile court's attention when the hearing was set in January 2012 or thereafter, and the hearing could have then been held before proceeding with the 18-month hearing.

## B. *Waiver Rule*

Parents are further barred from raising the issue on appeal because they were required to raise the issue by writ petition, before the juvenile court's section 366.26 ruling terminating parental rights. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452; *In re Ricky H.* (1992) 10 Cal.App.4th 552, 561, 563 [Fourth Dist., Div. Two]; *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 816 [Fourth Dist., Div. Two].)

Under the waiver rule, "an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order . . . ." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151.) This is because, "[t]o permit a parent to raise issues which go to the validity of a final earlier appealable order would directly undermine these dominant concerns of finality and

17

reasonable expedition." (*Id.* at p. 1152.) But "[a]s explained in *In re Janee J.* (1999) 74 Cal.App.4th 198, 208, the *Meranda P.* rule is not absolute. '[T]he crux of *Meranda P.* [is that] the waiver rule will be enforced unless due process forbids it.' . . . Thus in the usual case, application of the waiver rule will not offend due process.'" (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1079-1080.)

Parents argue that omission of the 12-month hearing, and terminating reunification services and setting a section 366.26 hearing at the 18-month hearing, violated their due process rights. We disagree. Reunification services are not a "constitutional entitlement." (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1242.) They are statutorily mandated and there is no statutory minimum period for reunification. There is only a statutory maximum period during which a child may be kept in foster care before a permanent plan is established. (*In re David H.* (1995) 33 Cal.App.4th 368, 388; *Aryanna C.,* at p. 1237.) For a child at least three years old, the default period for reunification services is 12 months, with a maximum limit of 18 months, absent extraordinary circumstances. (§ 366.22, subd. (a), *Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1091-1092; *In re Derrick S.* (2007) 156 Cal.App.4th 436, 445.) At the time of the July 2012 hearing in the instant case, the maximum 18-month reunification period was about to run, with parents having received over 17 months of services.

Parents argue their due process rights were violated because, by skipping the 12-month hearing, they were deprived a review hearing with less stringent requirements for

18

continuing reunification services.  The 12-month review hearing under section 366.21, subdivision (g)(1),  allows the court to order additional reunification services up until the 18-month limitation period is reached.  For additional services, there must be a substantial probability the child would be returned home within six months or a finding reasonable services had not been provided.  (§ 366.21, subds. (f), (g)(1) & (g)(4).)

Unlike at the 12-month hearing, at the 18-month hearing, continuing reunification services requires a finding of exceptional circumstances.  (§ 366.22.)  At the 18-month review, governed by section 366.22, the court must set a section 366.26 hearing and terminate services unless the court finds a "substantial probability that the child will be returned to the physical custody of his or her parent . . . or that reasonable services have not been provided."  (§ 366.22, subd. (b).)  A finding that the child will be returned to the parent, requires findings that the parents have "consistently and regularly contacted and visited with the child," made "significant and consistent progress" on the problems leading to removal, and "demonstrated the capacity and ability both to complete the objectives of his or her substance abuse treatment plan" and "to provide for the child's safety, protection, physical and emotional well-being, and special needs."  (§ 366.22, subd. (b)(1)-(3).)

But even under the less demanding requirements applicable at a 12-month review hearing, it is not likely that the juvenile court would have ordered additional services for parents.  Had the court held a 12-month review hearing, such as in April 2012, the result would have likely been the same.  Mother had still not obtained an AA sponsor or

19

provided proof of attending AA. She had reportedly relapsed and had been drinking and smoking while visiting B.V. In addition, she had engaged in domestic violence with Joe in January 2012, after completing a domestic violence course. Father had failed to show up for three recommended therapy sessions in December 2011, resulting in the therapist terminating his therapy in January 2012. There was also evidence father continued to behave immaturely when with B.V. and did not maintain a parental role. In addition, father's home was not appropriate for B.V. because father was living with grandfather, who had several hits on Live Scan. During the juvenile dependency proceedings, parents received all of the due process protections necessary to ensure their rights were not violated.

Father argues that by not holding a 12-month review hearing, CFS "sandbagged" him with new concerns at the final 18-month review hearing, such as father's inadequate housing and his failure to complete a domestic violence counseling program. Father argues that had these concerns been raised earlier at a 12-month review hearing, he could have addressed them earlier. But the record shows that father had ample notice that he was required to provide suitable housing for B.V. and that he was required to attend counseling. Even assuming there was some confusion as to the nature of the counseling he was required to complete, there was no "sandbagging." Father was advised the hearing was an 18-month hearing, with the CFS recommending termination of reunification services and setting a section 366.26 hearing. Father was aware he needed to provide suitable housing for B.V. and that father's residence had not been approved.

20

Father also was advised his case plan required him to attend counseling and he was not in compliance because he stopped attending counseling.

Due process does not forbid enforcing the waiver rule in the instant case, since parents were provided with over 17 months of reasonable reunification services, with the focus of the proceedings on return of the child during the reunification period, independent judicial review at least every six months, and notice to parent of all proceedings and the right to counsel at all stages. (*In re S.D., supra,* 99 Cal.App.4th at pp. 1079-1080; *In re Meranda P., supra,* 56 Cal.App.4th at pp. 1154-1155.) Although the court skipped the 12-month hearing, the parties received proper notice of the 18-month hearing and did not object to omitting the 12-month hearing, even though they had numerous opportunities to do so. This case thus does not qualify as an "usual case," in which application of the waiver rule offends due process. (*In re S.D., supra,* 99 Cal.App.4th at pp. 1079-1080.)

Parents are therefore barred from asserting their objection to the court skipping the 12-month hearing because they did not seek writ relief before raising the objection on appeal. As this court explained in *Tabitha W.*, a juvenile court order setting a section 366.26 hearing and terminating reunification services is not an appealable order, other than by extraordinary writ. (*In re Ricky H., supra,* 10 Cal.App.4th at pp. 561-562; § 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) "Section 366.26, subdivision (*l*)(1) currently provides that 'An order by the court that a hearing pursuant to this section be held is not appealable at any time unless' a timely writ petition was filed, which

21

'substantively addressed the specific issues to be challenged and supported that challenge by an adequate record' and which 'was summarily denied or otherwise not decided on the merits.' . . . '[S]ection 366.26 subdivision (*l*) bars direct appeals from orders setting a section 366.26 hearing. The appellate court explained that its statutory interpretation is in keeping with recent legislative efforts to expedite finality in dependency proceedings and to achieve permanency for children in the system. [Citation.] In *In re Anthony B.* [(1999)] 72 Cal.App.4th [1017], 1023, the Court of Appeal extended "the bar of section 366.26, subdivision (*l*) [to] *all* orders issued at a hearing in which a setting order is entered."'" (*In re Tabitha W., supra,* 143 Cal.App.4th at pp. 815-816.)

At the 18-month hearing on July 26, 2012, the juvenile court advised parents of their writ rights. The court told parents that if they disagreed with the court's ruling, they must file a petition for extraordinary writ in order to preserve their right to appeal the decision, and this must be done within seven days. Parents did not file a petition for extraordinary writ and therefore, under section 366.26, subdivision (*l*), they did not preserve their right to object to the juvenile court not holding a 12-month review hearing before entering its order on July 26, 2012, terminating reunification services and setting the section 366.26 hearing.

IV

INEFFECTIVE ASSISTANCE OF COUNSEL CHALLENGE

Father contends he received ineffective assistance of counsel (IAC) because his attorney failed to object to the juvenile court setting and holding an 18-month review

hearing, without having held a 12-month review hearing.

Hoping to circumvent the waiver rule and forfeiture of his objection on appeal to skipping the 12-month hearing, father contends he received IAC because his attorney (1) failed to object during the hearing on January 10, 2012, to the juvenile court setting an 18-month review hearing, rather than a 12-month review hearing, (2) conceded the hearing on July 26, 2012, was an 18-month hearing governed by section 366.22, and (3) conceded father could not care for B.V. because father was living with grandfather.

As the court in *In re Carrie M.* (2001) 90 Cal.App.4th 530, noted, "A claim of ineffective assistance of counsel in a dependency matter is generally cognizable in the Court of Appeal on a petition for writ of habeas corpus. [Citation.]" (*Id.* at p. 533.) In the instant case, father did not file a petition for writ of habeas corpus. We recognize the rule requiring such a writ petition is not absolute. There is "an exception in cases where 'there simply could be no satisfactory explanation' for trial counsel's action or inaction [citations.]" (*In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1254.) The exception does not apply here because there was a satisfactory explanation for father's counsel not objecting to skipping the 12-month hearing. Had the court set a 12-month hearing instead of an 18-month hearing, the hearing would likely have been heard sooner, resulting in the probability the court would terminate services even sooner. Furthermore, there was reason for not objecting at the 18-month hearing because, by the time the hearing was held, B.V. had been removed for over 17 months and it was highly unlikely the court

23

would extend reunification services, even if the court deemed the hearing a 12-month hearing.

As stated in *Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510, ". . . the dependency law does not establish a minimum period of reunification. Rather, emphasis is on 'setting outside limits to the length of time a child may be kept in foster care before a permanent plan is established.' (*In re David H., supra,* 33 Cal.App.4th at p. 388.) Summing up this view, Seiser states: '[T]he statutory mandate for limiting reunification services to a maximum of 18 months from the date of the original removal will control over any conflict in the statutes.' (Seiser[& Kumli, Cal. Juvenile Courts Practice and Procedure (Lexis Nexis 2005)] § 2.153, p. 2-295.) This is because at the 18-month benchmark, the focus of a dependency proceeding, shifts to the child's needs for permanency and stability. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)"

Although in several cases a juvenile court extended services beyond the 18–month statutory period, this has occurred "only under extraordinary circumstances 'involv[ing] some external factor which prevented the parent from participating in the case plan.'" (*In re Denny H., supra,* 131 Cal.App.4th at p. 1510, quoting *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1388 [affirming lower court's refusal to so extend services].) In the absence of extraordinary circumstances, "the juvenile court's extension of services beyond 18-months was an abuse of discretion and in excess of its jurisdiction, as limited by statute." (*Denny H.,* at p. 1511.)

24

Here, at the time of the 18-month hearing, B.V. had been removed from his parents for 17 months and the trial court found that reasonable services had been provided. The court also found it was not likely B.V. would be returned to parents within the statutory time frame; custody by parents continued to be detrimental to B.V. and would not be in his best interests; and parents failed to participate regularly and make substantive progress in their treatment plans. Under these circumstances, father's attorney could have reasonably decided not to object to the court skipping the 12-month hearing because the outcome likely would have been the same or even worse in the event the 12-month hearing was heard sooner, with the court terminating services at that time. (*In re Denny H., supra,* 131 Cal.App.4th at p. 1511.)

There was also a satisfactory explanation for father's counsel conceding custody with father was inappropriate at the time of the 18-month hearing. Father could not have custody of B.V. because father was living with grandfather. Grandfather's home had not been approved because of his criminal history and he could not visit with B.V. unless visitation was supervised. Furthermore, it was apparent B.V. would not be placed with father and it was not likely reunification services would be extended because father had not completed his case plan. He had stopped going to counseling and he had exhibited immature, inappropriate behavior and a failure to maintain a parental role while visiting B.V. Under these circumstances, in which it was apparent the juvenile court would not place B.V. with father or extend reunification services, it was reasonable for father's attorney to concede B.V. could not be placed with father.

25

Since there was a reasonable explanation for father's attorney not objecting to the court skipping the 12-month hearing and conceding B.V. could not reside with father, father's IAC challenge should have been brought by petition for writ of habeas corpus, rather than by this appeal.

Furthermore, father's IAC challenge is not timely. Father's IAC claim is barred by the waiver rule because it relates to the January 2012 order and July 26, 2012 referral order. Therefore, as discussed in the preceding section of this opinion, father was required to raise his IAC challenge by either a writ petition for extraordinary relief or writ petition for habeas corpus, challenging the referral order. "The right to habeas corpus relief is, however, limited by the dependency order to which the claimed ineffective assistance of counsel relates and the timing of the petition for writ of habeas corpus. [Citation.]" (*In re Carrie M., supra,* 90 Cal.App.4th at p. 533, citing *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667.)

An IAC claim in connection with orders setting the 18-month hearing and the orders entered at the 18-month hearing, terminating reunification services and setting a section 366.26 hearing (referral order), may be raised in a timely petition for writ of habeas corpus or writ petition for extraordinary relief, filed in connection with those orders. This did not occur. The IAC claims may not be raised by an appeal from an order terminating parental rights or by a habeas corpus petition filed in connection with an appeal from an order terminating parental rights. (*In re Carrie M., supra,* 90 Cal.App.4th at p. 534; *In re Meranda P., supra,* 56 Cal.App.4th at pp. 1146, 1160-1166.)

Citing *In re S.D., supra,* 99 Cal.App.4th at pages 1079, 1080 and *In re Janee J., supra,* 74 Cal.App.4th at page 208, father argues the waiver rule does not apply because the failure to hold a 12-month hearing constitutes a "defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole." (*Janee J.,* at p. 208.) But, as discussed above, this exception to the waiver rule does not apply because the failure to hold a 12-month hearing in the instant case did not fundamentally undermine the statutory scheme and could have been corrected had the omission been raised properly and at the appropriate time. (*Id.* at p. 209, *In re Carrie M., supra,* 90 Cal.App.4th at p. 534; *In re Meranda P., supra,* 56 Cal.App.4th at pp. 1146, 1160-1166.)

In *In re S.D., supra,* 99 Cal.App.4th 1068, the mother's attorney conceded at the jurisdiction hearing that the court had jurisdiction over S.D. under section 300, subdivision (g) (failure to provide), solely because mother was incarcerated. But this alone was not a sufficient basis for finding jurisdiction. Under section 300, subdivision (g), the court was also required to find that the parent was unable to arrange for alternative care for the child. The court in *S.D.* found this fundamental misunderstanding of the law constituted IAC. Therefore the failure to timely appeal the jurisdiction order by filing a writ petition did not waive the objection later raised on appeal following termination of parental rights.

*S.D.* is distinguishable. Here, father is not challenging the jurisdiction order and there was no fundamental statutory misinterpretation. The instant case is also not one of

27

those rare cases in which "the appellate record demonstrates 'there simply could be no satisfactory explanation' for trial counsel's action or inaction." (*In re S.D., supra,* 99 Cal.App.4th at p. 1077.) Unlike *S.D.*, this case is not an extraordinary case of IAC, where there was patent error based on clear misinterpretation of a juvenile dependency statute. Here, father's attorney conceded at the 18-month hearing that B.V. could not at that time be placed with father because father was residing with grandfather, who had a criminal history, and father had not completed his case plan, including counseling. And although father's attorney and the court overlooked skipping the 12-month hearing, there was no misinterpretation of the law. As discussed above, there were satisfactory reasons for proceeding with the 18-month hearing at that point and conceding that B.V. could not be placed with father at that time.

Furthermore, father's IAC claim lacks merit because he has not established prejudice. In order to demonstrate IAC, father must show both that the acts of counsel fell below an objective standard of conduct required of a competent, diligent juvenile dependency advocate, and that he was prejudiced by counsel's alleged failures. (*In re Kristin H., supra,* 46 Cal.App.4th at pp. 1667-1668; *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 136.) Father must thus demonstrate that it is reasonably probable that a more favorable result would have been reached in the absence of the error. (*Kristin H.,* at p. 1668.) Father has not established this. It is not reasonably probable the outcome would have been more favorable had his attorney insisted on a 12-month hearing at the January 10, 2012, or July 26, 2012, hearings.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>KING</u>
J.

29