Filed 11/3/14  A.B. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| A.B., | |
| Petitioner, | E061440 |
| v. | (Super.Ct.No. SWJ1200843) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso, Judge.  Petition denied.

Marla C. Mahoney for Petitioner A.B.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, Anna M. March and and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

A.B. (Mother) seeks extraordinary writ review of the juvenile court's order terminating her reunification services and setting a permanency planning hearing under Welfare and Institutions Code[1] section 366.26 as to her five-year-old daughter C.B. (Daughter) and three-year-old son C.B. (Son).[2]  (Cal. Rules of Court, rule 8.452.)  On appeal, Mother contends (1) the court erred in terminating her services because there was insufficient evidence to show she was provided with reasonable services; (2) the court had discretion to continue the 18-month review hearing if no reasonable services had been provided; and (3) the court erred in finding it would be detrimental to return the children to her care on family maintenance services.  We reject these contentions and deny Mother's petition.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Riverside County Department of Public Social Services (DPSS) on November 20, 2012, after a referral was received alleging Mother had been involved in a physical altercation with the maternal grandfather.  The

---

[1]  All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]  Daughter's father is deceased.  Son's father had initially sought custody of Son and was unsuccessful.  Son's father has not challenged any orders made in the juvenile court and is not a party to this writ petition.

2

altercation resulted in Mother breaking a house window where the children were watching television, Mother punching the maternal grandfather twice in the face, and the maternal grandfather cutting his leg and foot on a piece of glass. The maternal grandmother and Daughter confirmed the allegations. The altercation stemmed from Mother wanting to spend the night at her boyfriend's house while leaving the children with the maternal grandfather. Mother left following the incident and her whereabouts were unknown for several days.

Mother and her children were residing with the maternal grandfather at the time of the incident and the home was found to be in an "unhealthy" and "hazardous" condition. Son's father reported that he had ended his relationship with Mother because Mother had physically assaulted him. Mother also had incidents of domestic violence with Daughter's father, who had committed suicide in 2010. Mother also had an incident of domestic violence with the maternal grandmother, resulting in Mother's arrest. Mother had been diagnosed with depression and an anxiety disorder and was not compliant with her medication. The children were taken into protective custody and placed in a foster home.

On November 21, 2012, a petition on behalf of the children was filed pursuant to section 300, subdivision (b) (failure to protect). The children were formally detained at the November 26, 2012 detention hearing, and Mother was provided with services pending further proceedings.

At the December 26, 2012 jurisdictional hearing, the juvenile court found the allegations in the petition true as amended. Specifically, the court found the allegations true that Mother had engaged in acts of domestic violence in the presence of the children and that Mother had unresolved mental health issues thereby placing the children at risk of suffering serious physical and emotional harm.

The contested dispositional hearing was held on January 23, 2013. At that time, the juvenile court declared the children dependents of the court and provided reunification services for Mother and Son's father. Mother's case plan required Mother to obtain suitable housing; express her anger appropriately; and participate in a parenting program, psychological evaluation, a medication evaluation, and general counseling.

By the six-month review hearing in July 2013, Mother had completed a psychological evaluation on January 4, 2013, with Dr. Robert Suiter. Mother was diagnosed with "Probable Dysthymia." The results of the testing showed that Mother had not been " 'fully open and honest with the testing' " and the personality data showed that Mother " 'may have some antisocial traits but is unlikely to have a posttraumatic pattern of any ongoing overt depression or anxiety.' " Dr. Suiter opined Mother did not have a mental disorder that would preclude her from being able to care for her children or from benefiting from services and that she did not need medication despite being placed on an involuntary psychiatric hold on May 13, 2013.

Mother had begun general counseling at MFI Recovery (MFI) and had attended 10 out of 16 sessions. She had failed to appear to her recently scheduled sessions due to

4

being admitted on a psychiatric hold. Mother's therapist recommended further counseling sessions with a more intensive therapeutic treatment and further evaluations as to her mental health and behaviors. Mother's therapist had suspected Mother was abusing drugs, and the social worker had encouraged the therapist to drug test Mother. Mother had completed a parenting education program; however, based on Mother's current behaviors, the social worker believed that Mother required another parenting program geared towards younger children. Mother had no stable housing and had continued to rely on her father for support. In addition, Mother had continued to display anger and questionable behavior. On March 27, 2013, Mother had been cited with a vehicle violation and driver in possession of less than an ounce of marijuana.

Mother had supervised visits with the children twice a week. She had visited the children; however, the visits had been inconsistent. Mother claimed that she had transportation issues; however, the social worker had provided Mother with bus passes. Meanwhile, the children were doing well and thriving in their foster home. The children were bonded to their caregivers and very bonded to each other. They had displayed affection for each other in the form of hugs and kisses and Son sought his sister for comfort. The caregivers were very attentive and affectionate to the children, resulting in the children appearing to be stable and comfortable in the home.

At the August 27, 2013 contested six-month review hearing, the juvenile court continued reunification services. At that time, the social worker had provided Mother with further referrals to services.

In August 2013 and April 2014, Mother had been noncompliant with her case plan. She had failed to maintain consistent contact with DPSS, was unemployed, did not have a stable residence, failed to return to her general counseling sessions with her therapist, and failed to visit the children. Moreover, on August 14 and 19, 2013, Mother had been arrested for trespassing and for being under the influence of a controlled substance. Mother had not made contact with the social worker since August 28, 2013. The social worker had attempted to contact Mother to no avail. Mother had eventually contacted the social worker in January 2014, indicating that she wanted to visit the children. Mother had been residing in Anza, California, until the residence had allegedly burned down, and had continued to decline the social worker's offer for bus passes.[3] By February 2014, Mother was living with an aunt in Murrieta, California. Before resuming supervised visits, the social worker had required Mother to randomly drug test. Mother had been referred to random drug testing; however, she missed the first test and as of February 2014, she had not tested, claiming the testing site was too far. Mother had attempted to drug test on February 3, 2014, but had arrived late, near closing time, and was not able to test.

The contested 12-month review hearing was held on April 15, 2014. The social worker had recommended terminating services. In letters to the court, Mother claimed

---

[3] It appears that the social worker believed that by December 2013, Mother's services had been terminated. In a "Delivered Service Log," the social worker on December 9, 2013, noted that the current circumstances were that "[s]ervices to the parents have been terminated and parents have agreed that the children be placed with PGM [paternal grandmother] and that she will be adopting them."

that she had been making attempts to contact the social worker; that she was drug-free and 20-weeks pregnant; that she was living with her aunt's friend; and that she had lost the foster mother's contact information. The court reviewed the letters and documents submitted by Mother, and DPSS reserved objections to the sufficiency of the letters if the issue came up at the 18-month review hearing. DPSS had amended their recommendation to allow services to Mother to the 18-month time period or until May 20, 2014. Mother's counsel argued that there was a miscommunication between the social worker and Mother; that Mother had attempted to contact the social worker; that the social worker believed Mother's services had been terminated and therefore did not contact Mother; that Mother could have been more proactive; and that Mother understood that she had about a month until the 18-month review hearing. Following further argument, the court terminated Son's father's services but continued services for Mother.

In April 2014, the social worker had referred Mother for a medication evaluation assessment. In response, Mother became very upset and stated the social worker was harming her unborn child by making her take psychotropic medication. The social worker had also referred Mother to MFI for general individual counseling. Mother was upset that she had to participate in counseling. By the May 20, 2014 18-month review hearing, Mother had not contacted MFI to follow up with her case plan. When the social worker called Mother on April 23, 2014, to inform Mother that she had been referred to MFI for parenting classes, Mother became very upset, raised her voice, and stated that she did not need to take another parenting class. At that time, Mother had refused to

participate even after the social worker had explained to Mother that Mother had not benefitted from the prior class as evidenced by her unknown whereabouts and failure to contact DPSS in the last six months. Furthermore, Mother had tested positive for marijuana use following the contested 12-month review hearing. Mother had indicated to the social worker that the last time she had smoked marijuana was in September 2013; however, it was evident that Mother had continued to smoke marijuana thereby placing her unborn child at risk. Mother indicated that she had a "marijuana card" for anxiety, but had not submitted proof. Mother had also informed the social worker that while living in Anza with her ex-boyfriend, she had been cultivating marijuana with a friend.

On April 8, 2014, a staff member from the Southwest Human Development, Family Support Services in Arizona had contacted the social worker to report that Mother had been sending messages on Facebook which concerned the staff member.[4] In those messages, Mother had spoke about revenge and a picture in which she claimed she had burned her ex-boyfriend's clothes. She had also spoke about DPSS, the social worker, and her perception of her services. In those messages, Mother had also admitted to being severely depressed about the end of her relationship. The social worker concluded that Mother had demonstrated no efforts in participating in services, continued to blame others for her predicament, and continued to engage in questionable behaviors.

The May 20, 2014 18-month review hearing was continued to June 24, 2014.

---

[4] An ICPC had been submitted to Arizona social services in regard to Daughter's paternal grandmother. Arizona ICPC was in the process of approving the paternal grandmother's home.

On June 5, 2014, the social worker conducted a home evaluation of the home Mother resided in. At that time, Mother's aunt's boyfriend indicated that Mother had not paid rent or contributed to groceries or household items; that he was merely helping his friend (Mother's aunt); and that Mother needed to move out as soon as she found her own place. He also noted that he hoped Mother would find her own place as soon as possible and that he was only helping Mother on a short term basis. As of June 17, 2014, Mother had not participated in any of her services, despite being given referrals and bus passes, and had no stable housing. She, however, had participated in visits with the children.

The 18-month review hearing was held on June 24, 2014. At that time, Mother had provided a stipulated testimony. The testimony reiterated that Mother had completed the psychological and medication evaluations in 2013 which resulted in no medication being necessary; that she had completed a parenting program on April 29, 2013; that she had satisfied a significant portion of her counseling component; that she had consistently visited the children up until August 2013; that she had attempted to call the social worker numerous times between August and December 2013; that she had a valid marijuana card; and that she had stable housing until she secured her own home. She also explained that since she had been living in Anza, it had been difficult for her to access reunification services; and that she had attempted to contact MFI but a valid referral was not in place. DPSS offered a stipulated testimony of the social worker, which in pertinent part stated that the social worker had called the clinician at MFI and had confirmed Mother's referral

9

for services at MFI were active; with one being renewed in April 2013 and another new referral being submitted in April 2014.

Mother's counsel argued that she had not been provided with reasonable services throughout the dependency proceedings; that the social worker had made no attempts to contact Mother from the six-month to the 12-month review hearing; and that the court should place the children with Mother on family maintenance. The court responded that the issue at the June 24, 2014 18-month review hearing should be whether reasonable services had been provided to Mother from the April 15, 2014 12-month review hearing to the 18-month review hearing, since at the 12-month review hearing, the court found reasonable services had been provided and that legally the issue was res judicata. Following further argument, the juvenile court found DPSS had provided reasonable services and that the children would be at risk if returned to Mother's care. The court thereafter terminated Mother's services and set a section 366.26 selection and implementation hearing for October 20, 2014.[5]

On July 2, 2014, Mother filed a notice of intent to file a writ petition.

---

[5] This court granted a stay to the section 366.26 selection and implementation hearing on September 22, 2014.

II

DISCUSSION

A.      *Reasonableness of Services*

Mother contends the juvenile court erred in terminating her services because substantial evidence does not support the court's finding that DPSS had provided or offered reasonable reunification services to her.  We disagree.

The dependency statutes place parameters on the duration of reunification services.  In general, services are limited to 18 months from the date the child was originally removed from parental custody.  (§ 361.5, subd. (a)(3).)  Within those 18 months, the juvenile court is required to conduct periodic review hearings.  (§ 366, subd. (a)(1).)  The first hearing, referred to as the "six-month review hearing," must be conducted six months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care as determined in section 361.49,[6] whichever occurs earlier.  (§ 366.21, subd. (e).)  The second hearing, referred to as the "12-month review hearing," must be conducted no later than 12 months after the date the child entered foster care.  (§ 366.21, subd. (f).)  The third hearing, the "18-month review hearing," must occur within 18 months after the date the child was originally removed from parental custody.  (§ 366.22, subd. (a).)

---

[6] Under section 361.49, "a child shall be deemed to have entered foster care on the earlier of the date of the jurisdictional hearing . . . or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent."

The dependency statutes also place limitations on the duration of reunification services depending on the age of the child at the initial removal. (§ 361.5, subd. (a).) Where, as here, two or more siblings are removed at the same time and one of the children is under the age of three, reunification services are presumptively limited to six months from the date of the dispositional hearing. (§ 361.5, subd. (a)(1)(C); *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 (*Tonya M.*).) At each subsequent review hearing, "a heightened showing is required to continue services. . . . The effect of these shifting standards is to make services during these three periods first presumed, then possible, then disfavored." (*Tonya M.*, at p. 845.)

Mother argues that DPSS failed to provide her with reasonable reunification services, because DPSS was under the misconception that the juvenile court had terminated her services at the six-month review hearing and had failed to contact her from August through December 2013. Mother also asserts that her services were unreasonable because the social worker had failed to provide her with referrals for anger management or substance abuse counseling.

Reunification services are reasonable if they address the problems that required removal of the child from parental custody and the supervising agency made reasonable efforts to facilitate compliance. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362 (*Ronell A.*).) Mother began receiving services pending further proceedings at the November 26, 2012 detention hearing. Mother's case plan eventually became effective at the dispositional hearing conducted on January 23, 2013. Mother did not challenge the

12

reasonableness of her case plan by appealing from the juvenile court's dispositional order.  Nor did she at any time during these dependency proceedings petition the juvenile court to modify her case plan.  (§ 388.)[7]  Furthermore, Mother did not challenge the reasonableness of her services at the April 15, 2014 12-month review hearing.  Rather, she had submitted on continuing her services to the 18-month review hearing and had acknowledged the hearing was merely a month away.  Consequently, by failing to challenge the content of the reunification plan by direct appeal and the finding of reasonableness of services at the 12-month review hearing, Mother waived any claim that the plan as ordered was unreasonable or that the court erred in finding services provided to her between August and December 2013 were reasonable.  (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501; *In re Julie M.* (1999) 69 Cal.App.4th 41, 46-47; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846; *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 810.)

Even if we assume Mother did not waive her challenges to the reasonableness of her services, we reject Mother's contentions on the merits.  Our review is limited to whether the appellate record discloses substantial evidence to support the juvenile court's finding that the agency made reasonable efforts to facilitate reunification recognizing that the standard is not whether the services provided were the best that might be provided in

---

[7] Section 388 allows the parent of a child adjudged a dependent of the juvenile court to petition the court to change, modify or set aside any order upon grounds of change of circumstance or new evidence.

13

an ideal world, but whether the services were reasonable under the circumstances, since "[i]n almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547 (*Misako R.*); accord, *In re Julie M.*, *supra*, 69 Cal.App.4th at p. 48.) "Services will be found reasonable if the [d]epartment has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972-973.) It is the agency's obligation at the six-month review hearing to make a record that reasonable services were provided. (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1478.)

"The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case." (*Ronell A.*, *supra*, 44 Cal.App.4th at p. 1362; accord, *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011 (*Mark N.*).) Relevant circumstances include a parent's willingness to participate in services. Reunification services are voluntary and the department cannot force an unwilling parent to participate in the case plan. (*Ronell A.*, at p. 1365.) The department is not required to "take the parent by the hand and escort him or her to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) Therefore, in assessing the reasonableness of reunification services, the juvenile court evaluates not

only the department's efforts to assist the parent in accessing the services, but also the parent's efforts to avail himself or herself of those services.

Finally, "with regard to the sufficiency of reunification services, our sole task on review is to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762 (*Angela S.*).) In doing so, we must review the evidence in a light most favorable to the prevailing party and indulge all reasonable inferences to uphold the court's ruling. (*Misako R.*, *supra*, 2 Cal.App.4th at p. 545.) "If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*Ibid.*)

When considered in this context, we conclude that the record contains substantial evidence to support the juvenile court's finding that services provided to Mother were reasonable. In its dispositional report, DPSS identified the problems that led to the loss of custody as Mother's parenting issues, mental health issues, and anger management issues. The reunification plan adopted for Mother contained a myriad of services designed to remedy these problems. The social worker supplied appropriate referrals for service providers on a number of occasions, including follow-up referrals. Although Mother had completed a psychological report, medication evaluation, and a parenting program, Mother's behaviors had demonstrated that she required further services, including drug testing. As such, the social worker had continued to provide Mother with referrals. The social worker had also encouraged Mother's therapist to drug test Mother

15

when the therapist had suspected Mother of using drugs. In fact, during the first six months of reunification services, Mother had taken advantage of the services provided to her.

Although Mother complains that the services provided failed to take into account her anger management and later her substance abuse issues, the record is clear that the social worker did take into account these needs as evidenced by having Mother continue with individual counseling, which would have addressed her anger management, and by having Mother randomly drug test. Mother, however, had claimed that she was not abusing drugs and had in fact suggested a drug hair follicle test at the 12-month hearing. When her hair follicle test showed Mother was positive for marijuana, the social worker required Mother to randomly drug test; however, Mother claimed that she had a marijuana card and required marijuana to combat her anxiety. The parties and the court had anticipated that Mother would be able to succeed in her case plan during the first six months of reunification services. In fact, she had availed herself of services and appeared to be making progress until August 2013. Mother had been provided with services including referrals to parenting programs, individual therapy and counseling, and bus passes. However, as the record discloses, after August 2013, Mother had failed to participate in her case plan—instead removing herself from services and discontinuing contact with DPSS and her children until around January 2014. After services were continued to the 18-month review hearing, Mother had again been provided with referrals; however, Mother claimed that she did not require further services, despite

16

evidence to the contrary. Moreover, as has been often remarked, if Mother felt during the reunification period that the services offered to her were inadequate, she had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan. (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416.)

The record shows that DPSS provided Mother with numerous referrals. Mother simply failed to avail herself of the referrals and the programs. As in *Angela S.*, *supra*, 36 Cal.App.4th at p. 763, Mother's "real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered."

In sum, the evidence shows that Mother's case plan was tailored to fit her circumstances and that DPSS made reasonable efforts to assist her to comply with her case plan. Hence, the services provided, while not perfect in every regard, were reasonable in the circumstances (*Misako R.*, *supra*, 2 Cal.App.4th at p. 547), and the juvenile court's finding that reasonable reunification services were provided is supported by substantial evidence. (See *Angela S.*, *supra*, 36 Cal.App.4th at p. 762.)

B.      *Continuance of 18-Month Review Hearing*

Mother also claims that the juvenile court had discretion to continue the 18-month review hearing pursuant to section 352 if no reasonable services had been provided throughout the duration of the proceedings. Specifically, she asserts that since she had not been provided with services between August and December 2013, because the social worker had believed services had been terminated, the juvenile court abused its discretion in not continuing the 18-month review hearing.

17

The court may extend services beyond the 18-month hearing date only in an extraordinary case. (*Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1388.) "[T]he court shall give substantial weight to a minor's need for prompt resolution of his or her custody status . . . ." (§ 352, subd. (a).) "Continuances are discouraged [citation] and we reverse an order denying a continuance only on a showing of an abuse of discretion [citation]." (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810-811.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. . . .' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Section 352, however, does not permit a court to "extend" family reunification services. Rather, it grants the court discretion to continue a hearing upon a motion by a parent. (§ 352, subd. (a).)[8] In order to file such a motion, the party must file written notice of the motion at least two court days before the hearing, "together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (*Ibid*.)

Here, Mother did not request a continuance of the 18-month review hearing before or during the hearing, pursuant to section 352 or otherwise. Instead, at the 18-month review hearing, she asked the juvenile court to place the children in her custody on family maintenance because she had completed the majority of her case plan. Mother thus

---

[8] Section 352, subdivision (a), enables a juvenile court to continue any juvenile dependency hearing beyond the time limit within which the hearing is otherwise required to be held upon a showing of good cause and provided a continuance will not be contrary to the interest of the minor.

forfeited her argument that the juvenile court abused its discretion by not continuing the 18-month review hearing pursuant to a section 352 motion.

Mother's reliance on *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774 (*Elizabeth R.*) is unavailing. In *Elizabeth R.*, the juvenile court reluctantly terminated reunification services at the 18-month review hearing for a mentally ill mother who had an "impeccable record of visitation and efforts to comply with the reunification plan," but her efforts were unsuccessful because she was hospitalized for all but five months of the reunification phase of the dependency proceedings. (*Id*. at pp. 1777-1778.) Though impressed with the mother's progress and ability to sustain her mental health, the court believed it had no choice but to terminate reunification services. (*Id*. at p. 1783.) On appeal, the case was remanded for the juvenile court to entertain a section 352 motion for a continuance of services beyond the statutory limitation. (*Elizabeth R*., *supra*, 35 Cal.App.4th at p. 1799.) The appellate court concluded "section 352 provides an emergency escape valve in those rare instances" in which the juvenile court determines the best interests of the child would be served by a continuance of a review hearing beyond the statutorily permissible time frame. (*Id*. at pp. 1798-1799.)

No such circumstances exist in this case. First, there is no indication that the juvenile court believed it had no discretion to continue the 18-month review hearing. Moreover, Mother did not request such a continuance. Furthermore, here, by contrast, Mother did not have an "impeccable" record of doing her best and cooperating with DPSS, and there is nothing in the record indicating she was prevented from fully

19

complying with the case plan due to mental health problems. Although the social worker at one time noted on December 9, 2013, that services as to the parents had been terminated, there is no indication in the record to suggest that the social worker had made no attempts to contact Mother. In fact, the record shows that the social worker had attempted to contact Mother but that Mother's whereabouts were unknown between August and December 2013, and that referrals for Mother were in place. Furthermore, this is not a situation in which a reunification plan failed to accommodate an extraordinary situation or external factors, such as mental illness or incarceration, thereby preventing Mother from maintaining visitation and causing "involuntary estrangement." (*Elizabeth R.*, *supra*, 35 Cal.App.4th at p. 1792.)

*Mark N.*, *supra*, 60 Cal.App.4th 996, also relied upon by Mother, is also inapposite. There, the department failed to contact the father during 13 of a 17-month reunification period while he was incarcerated, made "*no* effort to determine whether any services were available or could be provided," and instead concluded there was no need to "take any action to facilitate the reunification process." (*Mark N.*, *supra*, 60 Cal.App.4th at pp. 1012-1013, original italics.) The circumstances here are quite distinguishable.

We disagree with Mother that this case presents extraordinary circumstances or special needs warranting a continuance beyond the time set for the 18-month review hearing. The extraordinary circumstances required in order to continue services for a longer time under the exception are not present here, and the cases upon which Mother relies for her claim the court erred are distinguishable.

C.    *Substantial Risk of Detriment*

Finally, Mother contends the evidence was insufficient to support the juvenile court's finding there would be a substantial risk of detriment to the children if they were returned to her custody. She maintains she adequately addressed the issues leading to the dependency by making significant progress in her case and, by January 2014, securing suitable housing and consistently visiting the children.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) "[W]e must indulge all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) Mother bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

At the 18-month review hearing, "the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial

21

risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a); see also *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748 (*Blanca P.*).) The detriment standard, " 'while vaguely worded to be sure, must be construed as a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member.' It must mean what it says: that return presents a *substantial* risk of detriment to the child." (*Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 505, original italics.) In making its determination, the court shall consider the "efforts or progress, or both, demonstrated by the parent," as well as "the extent to which he or she availed himself or herself of services provided." (§ 366.22, subd. (a); *Blanca P.*, at p. 1748.) The agency has the burden of establishing detriment. (§ 366.22, subd. (a); *Blanca P.*, at p. 1748.)

Unless the court finds extraordinary circumstances are present as described in section 366.22, subdivision (b), at the 18-month review hearing, the court must return the child to the parents or terminate services and set a hearing to determine the child's permanent plan. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 596.) At the time of the 18-month review hearing, the focus shifts to the needs of the child for permanency and stability. (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510 (*Denny H.*).) Compliance with the technical requirements of a reunification plan by itself will not automatically result in return of the child. (*In re Dustin R.* (1997) 54

Cal.App.4th 1131, 1143.)  "[T]he decision whether to return a dependent child to parental custody is not necessarily governed solely by whether the parent has corrected the problem that required court intervention."  (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1344.)  "[T]he court must consider the effect such return would have on the child."  (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 894.)

Although Mother had initially participated in the services required by her reunification plan, she had made little or no progress in her case plan even after her services were continued to the 18-month review hearing.  By the time of the 18-month review hearing, Mother still had unstable housing, was unemployed, continued to demonstrate destructive behaviors, and had refused to participate in further services. When Mother's recent relationship ended, she had posted messages that aroused concern on her Facebook page, some with pictures showing she had set her ex-boyfriend's property on fire and one admitting she was depressed.  Furthermore, Mother was unable to cooperate with the social worker or rationally discuss significant matters; instead, she would argue, yell, insult, and misrepresent her communications with the social worker. Moreover, the record indicates that after August 2013, Mother's behavior continued to spiral downwards, resulting in her arrests, use of marijuana even while pregnant with her third child, and cultivation of marijuana.  The evidence showed there would be a substantial risk of detriment to the children if they were returned to her custody.

Some of the objectives of Mother's court-ordered case plan were for her to obtain stable and suitable housing, express anger appropriately, and behave in a manner that is not verbally, emotionally, physically, or sexually abusive. However, despite reunification services for nearly 20 months, Mother still had not shown she had reached her goal of obtaining stable housing, or expressing her anger appropriately, or refraining from verbally, emotionally, or physically abusive behaviors. Moreover, even after nearly 20 months, Mother's visitations had not progressed to unsupervised visits.

A court is required to give "substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).) "[A]t the 18-month benchmark, the focus of a dependency proceeding shifts to the child's needs for permanency and stability." (*Denny H.*, *supra*, 131 Cal.App.4th at p. 1510.) Although Mother had participated in services at the inception of the case and she had *suitable*, *temporary* housing with a friend, she appeared not to have overcome the problems that led to the removal of the children and was not able to provide a safe, secure and permanent home for the children. Substantial evidence supports the court's finding that the children would be at substantial risk of detriment if they were returned to Mother's custody.

## III

## DISPOSITION

The petition is denied.  This court's stay of the section 366.26 selection and implementation hearing is hereby lifted.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

MILLER

J.